Anna E. AQUINO

v.

**PUBLIC FINANCE CONSUMER DISCOUNT COMPANY.**

Civ. A. No. 84–0641.

United States District Court, E.D. Pennsylvania.

April 11, 1985.

Henry J. Sommer, Philadelphia, Pa., for plaintiff.

Robert Lapowsky, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

Anna E. Aquino has filed suit against the Public Finance Consumer Discount Company ("Public"), alleging that Public failed to meet its obligations under § 125(b)[1] of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., following her notice of rescission.[2] Plaintiff seeks the following relief: (1) a declaration that the transaction was properly rescinded; (2) the return of all money or property received by Public from plaintiff in this transaction; (3) a declaration that Public has forfeited its right to receive any additional money or property from plaintiff; (4) statutory damages; and (5) attorney's fees. Both parties have filed summary judgment motions on which I heard oral argument. For the reasons that follow, both motions will be granted in part and denied in part.

## I. The Facts

In October, 1981, plaintiff purchased a used car from Sheehy Ford. The purchase price was financed with a $5,000 loan from Public. The loan was secured by a mortgage on Aquino's home, a lien on the car and a security interest in Aquino's household goods.

In January, 1983, Public repossessed plaintiff's car. On February 10, 1983, plaintiff sent a letter to Sheehy and Public demanding rescission of the loan pursuant to § 1635(a).[3] Defendant initially declined

---

1. When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court. 15 U.S.C. § 1635(b) (1982).

2. Amendments to the Truth in Lending Act and revised regulations issued by the Federal Reserve Board became effective on October 1, 1982. Relevant facts in this case occurred both before and after October 1, 1982. Plaintiff's notice of rescission and defendant's response to that notice both took place after October 1, 1982, and must therefore be governed by the statute and regulations presently in effect. The disclosure violation which underlies plaintiff's right to rescind occurred before October 1, 1982, and must theefore by governed by the statute and regulations previously in effect. All citations will be to the statute and regulations in effect when the event at issue took place.

3. Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board,

to accept the rescission demand, whereas Sheehy settled out of court. Sometime in July, 1983, after reexamining the records of the Aquino transaction, Public acknowleged Aquino's right to rescind and cancelled the mortgage on her home.

Section 125(b) of the TILA required Public to "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction", and also required Public to return any money or property paid by Aquino in connection with the transaction, both within twenty days after receiving Aquino's notice of rescission. 15 U.S.C. § 1635(b). Public, however, waited approximately five months before taking any action to reflect the termination of Aquino's mortgage, and has yet to return its security interest in Aquino's household goods or any of the money paid by her in connection with the transaction.

## II. Plaintiff's Right to Rescind

■ There is no doubt that Public is correct in acknowledging Aquino's right to rescind. Whenever a consumer credit transaction results in a creditor acquiring a security interest in an obligor's home, § 1635(a) gives the obligor "the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later ..." 15 U.S.C. § 1635(a) (1976) (amended in other respects effective Oct. 1, 1982). Moreover, § 1635(a) requires the creditor to disclose this right to rescind in accordance with regulations promulgated by the Federal Reserve Board. *Id.* According to the Board's regulations, creditors are required to provide customers with a notice

of their right to rescind that specifies the precise date upon which the three day rescission period expires. 12 C.F.R. 226.9(b) (1982) (replaced effective Oct. 1, 1982). Although Public provided the proper notice form, it failed to specify the date upon which the three day period expired. Since Public failed to make this required disclosure, Aquino had the right to rescind the transaction.[4]

## III. The Validity of Plaintiff's Rescission Notice and of Defendant's Response

■ Public, however, argues that its tardy acknowledgement of plaintiff's right to rescind should not be construed as a violation of the TILA. After receiving plaintiff's notice of rescission, Public undertook a "thorough review" of its records but failed to discover any disclosure violation which would have justified rescission. When Public discovered the defective notice it had provided Aquino, it acted promptly to fulfill its obligations under § 1635(b). Since Aquino did not specify any particular disclosure violation which she believed entitled her to rescind the transaction, Public argues that it would be inequitable to penalize it for failing to ascertain the validity of her rescission notice within the twenty day period provided by § 1635(b).

Neither the law nor the facts of this case support Public's position. Section 1635(a) only requires the obligor to notify the creditor of his or her intention to rescind in accordance with regulations promulgated by the Board. *See* § 1635(a). If Congress had wished either to place an additional burden on the obligor or to grant the creditor additional time to respond to this type

---

of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a) (1982).

4. The putative waiver of the right of rescission entered into evidence by Public is irrelevant since it is not dated as required by the Board's regulations. *See* 12 C.F.R. § 226.9(e)(3) (1982) (replaced effective Oct. 1, 1982).

of rescission notice, it would have done so. Congress believed that § 1635(b)'s initial ten day response period was too short for creditors to ascertain the validity of a rescission notice, and that is one of the reasons why it increased the response period to twenty days. S.REP. NO. 96–368, 96th Cong., 2d Sess. 29 *reprinted in* 1980 U.S. CODE CONG. & AD.NEWS 236, 264. I do not have the authority to second guess Congress and increase the response period further. Similarly, the Board's regulations simply require the customer to notify the creditor of his or her intention to rescind the transaction. *See* 12 C.F.R. § 226.-23(a)(2) (1983). The only court to consider this issue held that a notice of rescission was effective even though it failed to notify the creditor of the alleged grounds upon which the rescission was based. *Jackson v. Universal Guardian Consumer Discount Co.*, 15 Clearinghouse Rev. 863 (C.A. No. 80–1191, M.D.Pa. Oct. 27, 1981).

Public's equitable argument is also undercut by it complete lack of initiative in seeking to determine its rights and obligations under the TILA. For no apparent reason, Public failed to contact plaintiff's counsel and inquire into the alleged basis of her notice of rescission. Although aware of the twenty day deadline, Public also failed to petition the court for a declaration of its rights and obligations under the TILA. A party's appeal to the court's conscience to excuse its delay in fulfilling statutory obligations must fall upon deaf ears when that party failed to take obvious steps to fulfill those obligations in a timely fashion.

Public also argues that Aquino's notice of rescission constituted an anticipatory breach of her obligations under the TILA, thereby relieving Public of its obligation to perform.

Public acknowledges that upon notice of rescission § 1635(b) requires the creditor to return to the obligor "any money or property given as earnest money, down payment, or otherwise," but notes that upon performance of its obligations § 1635(b) then requires the obligor to tender to the creditor any property the creditor has delivered to the obligor. According to Public, Aquino would therefore be required to return the $5,000 loan.

Aquino, however, in her notice of rescission, implied that she would not comply with Public's interpretation of § 1635(b). She stated that her only obligation under § 1635(b) was to return the car she had received in the underlying transaction. Since Public had already repossessed the car, she felt that her obligations under § 1635(b) were satisfied.

In support of its position, Public points to *Powers v. Sims and Levin*, 542 F.2d 1216 (4th Cir.1976), where a divided panel of the Fourth Circuit held "that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due." *Id.* at 1222. More specifically, the court held that a creditor could ignore its obligations under § 1635(b) when it is no longer assured of receiving its legal due from debtors who have announced their intention to make only partial restitution. *Id.* at 1221.[5]

Rescission is an equitable doctrine, and there is nothing in the statutory provision of the right of rescission or in § 1635(b)'s provision of the procedural steps in effecting the right of rescission which limits the power of a court of equity to circumscribe the right of rescission to avoid the perpetration of stark inequity ...

---

**5.** *Powers* is distinguishable from the case presently before me. In *Powers* the obligors explicitly stated that they would not tender some of the property they obtained in the transaction, *i.e.,* funds expended by the lender to pay their prior mortgage and taxes. 542 F.2d at 1220 n. 11. Aquino, on the other hand, did not object to returning all of the property she received in the transaction. Aquino and Public, however, could

*Id.*[6]

Several courts of appeals have agreed with "the gist" of the *Powers* case and held that "[a]lthough the right to rescind is statutorily granted [by the TILA], it remains an equitable doctrine subject to equitable considerations." *Brown v. Nat. Permanent Fed. Sav. & Loan Ass'n,* 683 F.2d 444, 447–48 (D.C.Cir.1982) (cases cited therein). When equity demands it, a rescission may be conditioned upon the return of property by the obligor. *Id.* at 447–48.

Equity also permits a creditor to offset the amount owed to it by an obligor pursuant to § 1635(b), rather than tendering those sums and awaiting a court's conditioning of rescission upon the return of property by the obligor.

> Nothing in section 1635(b) prevents the creditor from offsetting the value owed to it by the obligor from the sum it initially tenders to the obligor. Such an arrangement prevents a perfunctory exchange of funds and protects the lender from a dissipation of the money while it is in the hands of the obligor.

*Harris v. Tower Loan of Mississippi, Inc.,* 609 F.2d 120, 123 (5th Cir.), *cert. denied,* 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980).

However, courts in their effort to insure a just result should not forget that the TILA "was passed primarily to aid the unsophisticated consumer," *Thomka v. A.Z. Chevrolet, Inc.,* 619 F.2d 246, 248 (3d Cir.1980), and that "courts have consistently recognized [that] the act is intended to balance scales thought to be weighed in favor of lenders and is thus to be liberally construed in the favor of borrowers." *Bizier v. Globe Financial Services, Inc.,* 654 F.2d 1, 3 (1st Cir.1981) (cases cited therein).

Upon notice of rescission, § 1635(b) clearly places the burden of first performance on the creditor, the party who has violated the law. Under most circumstances a creditor is not permitted "to refuse to perform unless or until the obligor tenders payment." *Harris v. Tower Loan of Mississippi, Inc., supra,* at 123. Only when it is necessary to prevent a "stark inequity" or to guarantee a creditor its "legal due," should a creditor be allowed to ignore its obligations under § 1635(b).

When offsetting by a creditor will clearly protect its legal due, a creditor will not be permitted to ignore its obligations under the TILA, even if an obligor has made a technical error in demanding rescission.[7] If a creditor feels uncomfortable about its ability to calculate properly the offset, it is free to petition the court within the twenty day statutory period to determine the rights and obligations of the parties under § 1635(b).

Public, however, chose to ignore its obligations under the TILA for more than four months. It failed to calculate an offset or petition the court for a declaration of its rights and obligations. When it finally decided to calculate the difference between what it owed plaintiff and what she would have owed Public if it had performed its obligations under § 1635(b), it properly concluded that its security interest in Aquino's home was unnecessary to protect its legal due.

I therefore hold that Public's failure to take steps "necessary or appropriate to reflect the termination" of its security interest in plaintiff's home within the twenty day period prescribed by statute, constituted a violation of § 1635(b).

### IV. Statutory Damages and Attorney's Fees

Section 130(a) of the TILA clearly states that any creditor who violates § 1635(b) is

---

not agree on how to characterize what property was received in the transaction.

**6.** Congress has agreed that nothing in § 1635(b) prevents a court of equity from modifying the exchange procedures specified in that section. The 1982 amendments to the TILA give courts

the power to alter the procedures prescribed by § 1635(b). 15 U.S.C. § 1635(b) (1982).

**7.** The technical error lay in Aquino's belief that the car, rather than the loan proceeds, was the only property she received in the transaction with Public. *See infra* pp. 511–512.

liable for statutory damages and attorney's fees.

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, ... with respect to any person is liable to such person in an amount equal to the sum of—
>
> .    .    .    .    .
>
> (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, ... except that liability under this subparagraph shall not be less than $100 nor greater than $1,000; ...
>
> .    .    .    .    .
>
> (3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1640(a) (1982). Since the finance charge for this transaction was well over $500.00, Aquino is entitled to the maximum damage award of $1,000.00. Independent of Aquino's entitlement to statutory damages, an award of attorney's fees is mandated since her right to rescind was acknowledged by Public only after she filed this lawsuit.

Despite the clear language of § 1640(a), Public claims that Aquino is not entitled to an award of damages. In October, 1982, Aquino instituted suit against Public seeking damages under § 1640(a) for alleged disclosure violations of the TILA. That suit was settled out of court. Aquino later rescinded the transaction and filed this suit after Public failed to honor her notice of rescission. Public argues that because Aquino has already recovered damages under § 1640(a) for a disclosure violation, she is barred from recovery under the same section for Public's failure to honor her rescission demand. In support of its position Public points to §§ 1640(d) and (g) and argues that both subsections show that an obligor is only entitled to one statutory damage award per transaction.

Subsection (d) states that "[w]hen there are multiple obligors in a consumer credit transaction ... there shall be no more than one recovery of damages under subsection (a)(2) of this section for a violation of this subchapter." 15 U.S.C. § 1640(d) (1982).

■ The meaning of this subsection seems clear. If two or more obligors, such as a husband and wife, enter into a transaction in which the creditor fails to make a required disclosure, they are entitled to only one award of statutory damages for that violation. This subsection clearly does not limit obligors to one award of statutory damages per transaction. Since it does not even state that obligors are confined to one award for multiple disclosure violations, it is hard to understand how it could be read to limit an obligor to one recovery for two different types of violations: (1) failure to disclose, and (2) failure to honor a valid rescission.

Subsection (g) reads as follows:

> The multiple failure to disclose to any person any information required ... to be disclosed [under the TILA] ... shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries. This subsection does not bar any remedy permitted by section 1635 of this title.

15 U.S.C. § 1640(g) (1982).

■ Although subsection (g) clearly limits obligors to one recovery for multiple disclosure violations, nothing in that subsection limits obligors to one recovery per transaction if there is later a failure to acknowledge a valid rescission. Congress is certainly aware of the difference between disclosure violations and rescission violations. In 1982, § 1640(a) was amended to confirm the position of certain courts that obligors are entitled to statutory damages for rescission violations even when their claims for disclosure violations are time-barred. *Compare* 15 U.S.C. § 1640(a)

(1976) *with* 15 U.S.C. § 1640(a) (1982); *see, e.g., Reid v. Liberty Consumer Discount Co. of Pa.*, 484 F.Supp. 435, 441 (E.D.Pa. 1980). Clearly, if Congress wished to prohibit awards of statutory damages for rescission violations whenever an obligor had previously recovered damages for a disclosure violation, it could have easily said so.

Pursuant to the TILA, an obligor who has previously collected damages for a disclosure violation can later discover a more egregious violation and, more than two years after the first lawsuit, rescind the transaction. Although Congress enacted a one year statute of limitations for disclosure violations, it permitted rescission up to three years from the date of the underlying transaction. *See* 15 U.S.C. §§ 1640(e) and 1635(f) (1982). Not permitting an additional recovery of statutory damages for a subsequent violation of § 1635(b), however, would severely undermine a creditor's incentive to honor a valid rescission demand.[8] Yet Congress explicitly allowed for rescission suits after disclosure suits and explicitly provided a statutory damages penalty for rescission violations. Stretching the language of subsection (g) to prevent a later recovery for a rescission violation, as defendant proposes, would undercut the penalty Congress clearly decided to impose and I refuse to do so.

## V. Equitable Conditioning Rescission

After a creditor has performed its obligations pursuant to a valid rescission, the obligor must tender to the creditor any property the creditor has previously delivered to the obligor. 15 U.S.C. § 1635(b). Public claims that this requires Aquino to return the $5,000.00 she was loaned and requests that I condition rescission upon the return of those funds. Aquino argues

that the only property she received in the transaction was the car, and since that was already repossessed by Public, her obligations under § 1635(b) are complete. Both parties can point to courts of appeals opinions in support of their position. Unfortunately, no court of appeals has explicitly acknowledged these varying approaches nor convincingly explained why one approach should be adopted over another.[9]

Aquino's position might be valid in a "credit sale" context where the seller is also the creditor. *See* 15 U.S.C. § 1602(g) (1982). In that situation a seller is simply giving the obligor credit so that he or she can purchase one of the seller's commodities. Allowing the obligor to return the property purchased instead of the monetary equivalent of the credit extended would still return the parties to the status quo.

The transaction between Aquino and Public, however, was quite different. Public did not sell a car to Aquino and it had no incentive to see that Aquino purchased a car from one dealer rather than another, so long as she arranged for credit through Public. There is simply no evidence that Public was so intimately involved with Sheehy that it should be considered the seller's alter ego. In this context I see no reason why an obligor should be permitted to return the property purchased with the proceeds of the credit transaction rather than the monetary equivalent of the credit extended. If an obligor were permitted to return the purchased property, then a creditor would suffer the consequences of an obligor's poor consumer decision. As stated by my Brother Bechtle in an analogous case, "the Court sees no reason to penalize the lender for the unsatisfactory services performed by a third party." *Bookhart v.*

---

8. "[W]ithout a fixed penalty, there will be many instances where actual damages alone will provide little or no effective remedy for the consumer...." S.REP. NO. 96–368, *supra* at 32, *reprinted in* 1980 U.S.CODE CONG & AD NEWS at 267.

9. *See, e.g., Brown v. Nat. Permanent Fed. Sav. & Loan Ass'n, supra* at 449 (remanded to determine whether rescission should be conditioned

on the return to bank by obligor of fair value of work on obligor's home); *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 254 (6th Cir.1980) (rescission conditioned on the return to bank by obligor of value of aluminum siding purchased with loan proceeds); *Gerasta v. Hibernia Nat. Bank*, 575 F.2d 580, 585 (5th Cir.1978) (bank is entitled to a return of loan proceeds).

*Mid-Penn Consumer Discount Co.,* 559 F.Supp. 208, 212 (E.D.Pa.1983).

Rescission will therefore be conditioned upon plaintiff's return of that portion of the loan proceeds she has not already paid to the defendant in the form of money or property.[10] More specifically, the amount Aquino has already paid Public ($1,768.03), plus the amount for which Aquino's repossessed car was sold by Public ($2,550.00), a total of $4,318.03, shall be deducted from the $5,000.00 in loan proceeds, leaving a balance of $681.97 that Aquino is required to tender to Public. *See* 15 U.S.C. § 1635(b). An appropriate order follows.

---

**10.** Since Aquino did not offer to tender the remaining loan proceeds, I reject plaintiff's position that Public has forfeited its right to this money. *See* 15 U.S.C. § 1635(b).