**In re Mary T. LAUBACH, Debtor.**

**Mary T. LAUBACH, Plaintiff,**

**v.**

**FIDELITY CONSUMER DISCOUNT CO. & Edward Sparkman, Esq., Trustee, Defendants.**

**Bankruptcy No. 87–00899S.**
**Adv. No. 87–0372S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 2, 1987.

Lawrence T. Phelan, Philadelphia, for defendant/Fidelity Consumer Discount Co.

David A. Searles, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff/debtor.

**484**

Edward Sparkman, Trustee, Philadelphia, Pa.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The Motion before us in the instant case raises close and provocative questions regarding the impact of claim preclusion by means of a subset of res judicata, i.e., the doctrine of merger. We hold that all of the claims arising out of a single financing transaction must be raised in single action, or they will be barred by merger. However, we do not believe that claims arising out of a subsequent purported rescission of the financing transaction are barred. Thus, here, we find that all of the claims raised by the Plaintiff in her present lawsuit which arose out of her contracting to finance the purchase of an automobile on April 10, 1984, i.e., her claims of violations of certain state and federal law set forth in Claims Three through Six of her Complaint, are barred by merger as a result of the Plaintiff's previous successful federal action claiming damages under the Federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter referred to as "TILA"). However, her Claims based upon a rescission of the finance contract, i.e., Claims One and Two, are not barred.

On February 25, 1987, the Debtor in the case and Plaintiff in this Adversary proceeding, MARY T. LAUBACH (hereinafter referred to as "the Debtor"), filed her underlying Chapter 13 bankruptcy case. On April 22, 1987, she filed the instant Adversary proceeding against FIDELITY CONSUMER DISCOUNT COMPANY (hereinafter referred to as "the Lender"). On June 16, 1987, the Lender filed a Motion to Dismiss the Complaint on the sole basis of res judicata or, more precisely, merger, accompanied by a Memorandum of Law. This Motion, answered by the Debtor, was listed for a hearing on July 14, 1987. At that time, the Debtor's counsel indicated that he had prepared a Memorandum of Law in support of his Answer. After a colloquy with counsel on July 14, 1987, we entered an Order of July 15, 1987, allowing the Lender and the Debtor until August 4,

1987, and and August 11, 1987, respectively, to file additional Memoranda.

Since the matter before us is a Motion to Dismiss, for purposes of resolving this matter, all of the averments of the Debtor's Complaint must be assumed to be true and all reasonable inferences therefrom must be drawn in favor of the Debtor. *See* 2A J. MOORE, FEDERAL PRACTICE, ¶ 12.07[2.5], at 12–63. *See also In re Littles,* 75 B.R. 240, 241 (Bankr.E.D.Pa.1987). Hence, we utilize the averments of the Complaint as our reference point in setting forth the underlying facts of the matter before us for the purposes of this Motion.

On April 10, 1984, the Debtor agreed to purchase a 1981 Ford Granada automobile from Kutner Buick, Inc. (hereinafter referred to as "Kutner"), for $5,966.74. Kutner arranged the financing by means of a loan from the Lender. The interest rate in the loan financing contract was substantially in excess of that permitted by the Pennsylvania Motor Vehicle Sales Finance Act (hereinafter referred to as "MVSFA"), particularly 69 P.S. § 619 thereof. Hence, the Debtor claimed that this was a transaction characterized as "dragging the body," *Anderson v. Automobile Fund, Inc.,* 258 Pa.Super. 1, 20, 391 A.2d 642, 651 (1978) (per SPAETH, J., op. in support of reversal), i.e., a conspiracy between a seller and a lender to "drag" the consumer's "body" to a loan company where the transaction is written as a loan rather than the installment-sale that it actually is, in an attempt to thereby circumvent the regulatory provision of an installment-sale law, particularly the lower permissible interest rate of that law. The Lender also took a mortgage against the Debtor's residence as security in the transaction.

As one result of the taking of this mortgage, the Debtor, on August 6, 1984, was able to send the Lender a letter asserting her right to rescind the transaction, pursuant to 15 U.S.C. § 1635, which purported right the Lender specifically denied in a responsive letter.

Some time thereafter, in 1985, the Debtor instituted an action in federal court against the Lender, at C.A. No. 85–1902

(E.D.Pa.), pertinent to the April 10, 1984, contract, alleging that the Lender committed several violations of the TILA in providing disclosures to the Debtor in this transaction. On April 9, 1986, the district court, per the Honorable Clarence C. Newcomer, filed a Memorandum and Order granting summary judgment to the Debtor and awarding her $1,000.00 in statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A)(i).

On January 6, 1987, the Debtor's counsel sent another letter to the Lender reiterating her desire to rescind the transaction. The Lender did not respond to this letter, but also took no affirmative steps to acknowledge the rescission.

The Complaint in this action set forth six Claims or Counts, as follows:

1. Violation of the TILA in refusing to cancel the mortgage, allegedly justifying an order nullifying the mortgage and statutory damages for failing to respect the Debtor's right to rescind.

2. Cancellation of not only the finance charge, but the amount financed, due to the Debtor's effective tender in return of the vehicle and the impact of the second last sentence of 15 U.S.C. § 1635(b).

3. Violations of the Federal Trade Commission Rule relating to preservation of defenses, 16 C.F.R. § 443.2, and the MVSFA arising from the writing of the financing contract as a loan instead of a sale.

4. Usury, arising from an imposition of finance charges in excess of that permissible under the applicable MVSFA in the financing contract.

5. Unconscionability, in causing the elderly Debtor to unwisely encumber her home and pay an excessive price and finance charge for the vehicle and insurance for it in the financing contract.

6. Fraud and/or misrepresentation in taking security in the Debtor's home and charging her excessive interest in the financing contract.

█ Our research reveals that the issue of when res judicata and, particularly, merger is to be applied is a very murky area, largely because much of the caselaw is inconsistent, even within our own Circuit. We take particular note of the following cases: *Purter v. Heckler,* 771 F.2d 682 (3d Cir.1985) (res judicata not applied); *Wade v. City of Pittsburgh,* 765 F.2d 405 (3d Cir.1985) (res judicata not applied); *Charter Oak Fire Ins. Co. v. Sumitomo Marine & Fire Ins. Co., Ltd.,* 750 F.2d 267 (3d Cir.1984) (res judicata applied); *United States v. Athlone Industries, Inc.,* 746 F.2d 977 (3d Cir.1984) (res judicata not applied); and *Davis v. United States Steel Supply, etc.,* 688 F.2d 166 (3d Cir.1982) (en banc), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983) (res judicata applied).

The *Athlone* case cites the criteria for "[a]pplication of the claim preclusive aspect of the res judicata doctrine" thusly: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." 746 F.2d at 983. In the instant case, there is no question that we are presented with a situation where there has been a final judgment between the same two parties in, we might add, a different division of the same court in which the instant action is maintained. The difficult question is whether the instant lawsuit and the prior lawsuit were based "on the same causes of action."

Being a decision of the Court of Appeals en banc, with only three dissents among eleven judges, the *Davis* case is entitled to particular consideration. There, the Court overturned a district court verdict in favor of a plaintiff in a racial discrimination case because she had failed to appeal from a Commonwealth Court of Pennsylvania decision overturning an administrative decision in her favor, which had been affirmed by the Court of Common Pleas. In so holding, the Court of Appeals, applying Pennsylvania law, stated that,

for res judicata to apply there must be a showing that "between the previous action and the present action there [is] an identity in the thing sued on, identity of the cause of action, identity of the persons and parties to the action, and identi-

ty of the quality or capacity of the parties suing or sued." *Duquesne Stag Products Co. v. Lench,* 490 Pa. 102, 105, 415 A.2d 53, 55 (1980). *See also Callery v. Municipal Authority,* 432 Pa. 307, 312, 243 A.2d 385, 386 (1968) ("The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights."). 688 F.2d at 170–71.

In her federal action, the *Davis* plaintiff relied upon 42 U.S.C. § 1981, which was not recited as a cause of action in the state court proceedings. Nevertheless, the court, in applying res judicata, held as follows:

A single cause of action may comprise claims under a number of different statutory and common law grounds. *Kremer [v. Chemical Construction Corp.]* [456] U.S. [461] at [481] n. 22, 102 S.Ct. [1883] at 1897, n. 22 [72 L.Ed.2d 262]; *Antonioli v. Lehigh Coal and Navigation Co.,* 451 F.2d 1171, 1176 78 (3d Cir.1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972); *Williamson v. Columbia Gas & Electric Corp.,* 186 F.2d 464, 468 (3d Cir.1950). Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims, although a clear definition of that requisite similarity has been elusive. *See Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583, 588 n. 10 (3d Cir.1975) (considering various proposed definitions; C. Wright, A. Miller & E. Cooper, 18 Federal Practice and Procedures § 4407 (1981 & Supp.1982).

Thus, res judicata has been applied even when the second action is a federal Civil Rights action instituted after a state court action brought on different grounds. *See Auritt v. Wheatcroft,* 370 F.Supp. 948 (E.D.Pa.1974); and *Jamerson v. Lennox,* 356 F.Supp. 1164 (E.D.Pa.) (three-judge court), *aff'd,* 414 U.S. 802, 94 S.Ct. 150, 38 L.Ed.2d 39 (1973).

This application, when the second action is maintained under the Civil Rights Act and the original action was brought on different grounds, is subject to some question, since the underlying purpose of §§ 1983 and 1981, portions of the Reconstruction Civil Rights Acts, was to assure parties of a federal forum apart from state court forums in the south, which were the subject of Congressional mistrust. *See Allen v. McCurry,* 449 U.S. 90, 105–14, 101 S.Ct. 411, 420–25, 66 L.Ed.2d 308 (1980) (Blackman, J., dis. op.).

Nevertheless, in these cases, the principle was applied that res judicata binds the parties not only as to matters actually litigated in an earlier action, but also "binds the parties as to every matter which was or could have been offered to sustain or defeat the cause of action," *Jamerson, supra,* 356 F.Supp. at 1166, and that favorable judgment in an earlier action constitutes "an absolute bar in another case ... not only in respect of every ground of recovery, defense, or matter of fact and law which was presented, but also as to every ground of recovery, defense, or matter of fact on law which could have been presented." *Auritt, supra,* 370 F.Supp. at 951.

These same principles have been applied with equal force in the Pennsylvania state courts. *See, e.g., Schultz v. City of Philadelphia,* 314 Pa.Super. 194, 460 A.2d 833 (1983) (result in mandamus action brought by police organization bars later contract action by individual officers); and *Philadelphia Electric Co. v. Borough of Lansdale,* 283 Pa.Super. 378, 424 A.2d 514 (1982) (Federal Police Commission determination is binding on state courts).

Hence, the fact that, superficially, the "causes of action" are different in this case than the Debtor's initial case against the Lender is not decisive. The Debtor is not attempting to invoke the statutory damage provisions of the TILA in this action again, and this was the sole cause of action asserted in her initial case. However, she is invoking the self-same TILA in the first two claims of her Complaint, and she is claiming illegalities arising in the self-same

financing transaction as the initial TILA action was based in the remaining Claims of the Complaint.

We believe that the RESTATEMENT (SECOND) OF JUDGMENTS (1982), is an extremely helpful source in setting down standards for resolution of difficult res judicata problems. In studying the Restatement, we begin with § 18, which sets down the general rule of merger thusly:

§ 18. Judgment for Plaintiff—The General Rule of Merger

When a valid and final personal judgment is rendered in favor of the plaintiff:

(1) The plaintiff cannot therefore maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; and

(2) In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action. *Id.* § 18, at 151–52.

As is suggested above, the key element in our "merger" analysis here is the scope of the "claim" that has been extinguished by the first action. Addressing the concept, the Restatement states as follows:

§ 24 Dimensions of "Claim" for Purposes of Merger or Bar—General Rule Concerning "Splitting"

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), *the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.*

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expecta-

tions or business understanding or usage. *Id.* § 24, at 196 (emphasis added).

The Restatement then goes on to recite the following general rule concerning "splitting" of actions:

§ 25. Exemplifications of General Rule Concerning Splitting

The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

(1) To present evidence or grounds or theories of the case not presented in the first action, or

(2) To seek remedies or forms of relief not demanded in the first action. *Id.* § 25 at 209.

The Restatement has been cited with approval by not only the Court of Appeals, *see Athlone, supra,* 746 F.2d at 983 n. 4, but also by the United States Supreme Court in *Nevada v. United States,* 463 U.S. 110, 130–31 n. 12, 103 S.Ct. 2906, 2918–19 n. 12, 77 L.Ed.2d 509 (1983). We note, with the Court, that the second Restatement evinces "a more pragmatic" and far broader approach to identifying a "cause of action" for purposes of application of the doctrine of merger than its previous draft.

The Debtor offers, essentially, two arguments as to why merger should not be applied here: (1) A TILA disclosure violation is different and distinct from all other sorts of actions, citing those cases where creditors have been barred from asserting state-law causes of action as counterclaims in such actions; and (2) It was unlikely that the federal court hearing the first action would have exercised jurisdiction over the pendent state-law claims, especially since the split decision of the *Anderson v. Automobile Fund, supra,* court on the MVSFA issue rendered the issue uncertain.

These arguments appear to represent an invocation of an exception to the general rule set forth in the Restatement prohibiting splitting of actions, which is as follows:

§ 26. Exceptions to the General Rule Concerning Splitting

(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim,

and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: ...

. . . . .

(c) The plaintiff was unable to rely of a certain theory of the case or to seek a certain remedy or form of relief in the first action *because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories* or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief: ... *Id.* § 26(1)(c), at 233–34 (emphasis added).

However, as certain Comments included in the Restatement clearly reveal, this exception applies only when the plaintiff is clearly *barred* by a jurisdictional impediment or the court hearing the initial action, acting as a matter of discretion, *clearly* has *declined* to exercise jurisdiction. See RESTATEMENT, *supra,* § 25, comment e, at 213; § 26, comment c(1), at 237.

Despite the Debtor's assertions on this score, it is by no means "clear" to us that the federal court entertaining her TILA suit would have declined to hear the pendent state claims—or that creditor's counterclaims to a TILA action will always be stricken. In *Bolden v. Potamkin-Auerbach Chevrolet, Inc.,* 470 F.Supp. 618 (E.D. Pa.1979), Judge Pollak of the district court, presented with a TILA claim, exercised pendent jurisdiction over claims under the MVSFA, state usury law, and state laws prohibiting unfair trade practices, almost precisely the same type of claims as those which could have been raised by the Debtor here in her district court suit as pendent claims and are raised in Counts Three to Six of the Complaint here. Also, Judge Pollak refused to strike a creditor's state-law counterclaims.

While some district judges may not have concurred with Judge Pollak's disposition of these claims, the *Bolden* case establishes that it was certainly less than totally clear that the federal court would decline to exercise pendent jurisdiction over any of the Debtor's claims asserted here. We believe that the Debtor was required to test the waters of the district court on .his score before pronouncing them unsuitable for her state law claims. What we have here is thus a situation where pendent jurisdiction may have been exercised and the federal court, not having even been requested to hear these claims, certainly did not "clearly" decline to hear them.

We also note that the third Claim includes a cause of action under a federal Regulation. The district court would not have had to exercise pendent jurisdiction to hear this claim.

Similarly, we reject the Debtor's suggestion that TILA is a distinct sort of beast which cannot be joined in an action with other claims. *See, e.g., In re Kessler, Kessler v. Merrill Lynch Mortgage Corp.,* 76 B.R. 434 (Bankr.E.D.Pa., 1987); (TILA claim and claim under 11 U.S.C. §§ 502, 506 combined); *In re Mitchell, Mitchell v. Frankford Trust Co.,* 75 B.R. 593 (Bankr. E.D.Pa.1987) (same); *In re Russell,* 72 B.R. 855 (Bankr.E.D.Pa.1987) (TILA claim combined with challenges of state usury law and unfair trade practices act); and *In re Martin,* 72 B.R. 126 (Bankr.E.D.Pa.1987) (TILA claim and claim of improper imposition of "interest on arrears" combined).

We therefore are compelled to conclude that, under the Restatement's tests, there is no question that all of the claims based upon the financing contract of April 10, 1984, arose out of the same transaction, or series of connected transactions. We therefore hold that the doctrine of merger of all of the claims based on this contract with the TILA claim raised in the Debtor's first action against the Lender barred all such claims. Thus, we hold that Claims Three through Six of the Complaint—asserting violations of other laws but arising out of this same financing contract—are barred by merger.

We further add that we believe that this result is consistent with Third Circuit caselaw. Certainly, it is consistent with *Davis, supra,* and *Charter Oak, supra.* We believe that *Purter, supra,* which involves the more limited concept of administrative

res judicata, and *Wade, supra,* which was a Civil Rights Action[1] and an attempt to utilize a judgment not rendered on the merits as a basis for invocation of res judicata, are, for those reasons, clearly distinguishable.

What renders this case difficult is distinguishing it from *Athlone, supra.* In that case, the Court found that a claim as to whether a baseball pitching machine was a hazardous product was a distinct claim or cause of action from a failure of the manufacturer to report the machine as a hazardous product to the Consumer Product Safety Commission. There, the Court concluded that, since "different statutes, different acts, different wrongs, and ... different evidence to support the different material facts alleged" was present, 746 F.2d at 986, merger should not be applied. In addition, it was influenced by a decision consistent with its result by a district court in Minnesota faced with the exact same factual matrix. *Id.* at 981.

Here, the statutes, wrongs, and evidence may be different but, at least as to Claims Three through Six of the Complaint, the acts of the Lender giving rise to the allegedly illegal acts are the same as those that gave rise to the earlier TILA action. It is the same act of writing the transaction of April 10, 1984, which is the underlying factual basis for all of these claims. Also, there is no known authority elsewhere directly or even closely on point supporting the position of the Plaintiff. Thus, we find that *Athlone* is insufficient to outweigh the impact of, principally, the Restatement and *Davis,* which clearly support the Lender's position.

However, *Athlone* is, we believe, decisive in favor of the Debtor on the issue of the impact of merger on the Debtor's rescission-based claims recited in Claims One and Two of the Complaint. These Claims clearly involve an "act" different from those involved with the transaction of April 10, 1984, i.e., a rescission which initially took place on August 6, 1984, and was not re-enacted until January 6, 1987, after the initial federal lawsuit was completed. Clearly, the rescission was not part of the transaction of April 10, 1984, but, rather, attempted to undo it. We further believe that the meaning of the phrase "series of connected transactions" would be stretched far beyond its conventional meaning if the rescission actions taken months and years later would be considered part of a "series" with the original financing contract.

Furthermore, as the Debtor aptly points out, there is, as in *Athlone,* another court decision directly supporting the result urged by the Debtor on this point. In *Aquino v. Public Finance Consumer Discount Co.,* 606 F.Supp. 504 (E.D.Pa.1985), our very district court was faced with a situation where, after a consumer brought a suit against a lender for TILA disclosure violations and settled same, *id.* at 510, a later suit to enforce a rescission was found meritorious. At least by implication, *Aquino* is directly on point in concluding that an action challenging violations of requisite TILA disclosures in a financing contract has no merger effect on a subsequent action to enforce a rescission of the contract. That is, of course, exactly the type of action asserted in Claims One and Two of the Complaint. Therefore, on the basis of *Athlone* and *Aquino,* we hold that merger does not bar these claims, although it does bar the others.

In closing, we observe that it is regretful to note that the Debtor is barred from raising potentially meritorious claims, as we consider our rulings barring Claims Three through Six as the closer question before us. However, cognizant as we are of burgeoning litigation which has swelled our case dockets, we must be mindful of the purpose of res judicata.

Res judicata is a doctrine developed to prevent repetitive and unnecessary litigation, barring not only identical repetitive suits, but also preventing the assertion of a different legal theory which arises from the same liability-creating conduct, and which the party had a reasonable opportunity to present in the original suit. *See,*

---

**1.** *See* page 486 *supra.*

*e.g., Williamson v. Columbia Gas & Electric Corp.,* 186 F.2d 464, 469–70 (3d Cir. 1950), *cert. denied,* 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951); and *Ley v. Boron Oil Co.,* 454 F.Supp. 448, 449–50 (W.D. Pa.1978). A party is not entitled to a second lawsuit merely because he states a new theory of recovery or presents a sympathetic case, because res judicata is not a "procedural technicality; it is a doctrine designed to effect the sound public policy of putting an end to litigation." *Jamerson, supra,* 356 F.Supp. at 1169.

Of course, since Counts One and Two have survived the instant Motion to Dismiss, this litigation is not put at an end. However, in our order, in addition to dismissing Counts Three through Six of the Complaint, we have set forth a schedule requiring the Lender to answer or the parties to prepare a Stipulation of Facts relevant to Counts One and Two within twenty days and for the parties to submit Briefs and/or Motions for Summary Judgment at twenty-day intervals thereafter. Of course, since all that remains is a rescission claim, we encourage the parties to study our decision addressing a similar claim in *In re Tucker,* 74 B.R. 923, 928–33 (Bankr. E.D.Pa.1987), and make an effort to put an end to the matter by means of a settlement.