**Anna MAYFIELD**

v.

**VANGUARD SAVINGS & LOAN ASSOCIATION.**

Civ. A. No. 88-410.

United States District Court, E.D. Pennsylvania, Civil Division.

March 31, 1989.

---

Arthur L. Haywood, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Lawrence R. Watson, II, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Anna Mayfield filed this action against defendant Vanguard Savings & Loan Ass'n alleging that defendant violated the disclosure requirements of the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601, et seq. and Regulation Z, 12 C.F.R. § 226.1 et seq. Plaintiff's complaint seeks the following relief: damages under 15 U.S.C. § 1640; a declaration that defendant's security interest in plaintiff's property is void; an order requiring defendant to comply with its duty to rescind the loan transactions in accordance with the TILA; and an award of costs and reasonable attorney's fees under 15 U.S.C. § 1640. Presently before me is the motion of plaintiff for summary judgment. Upon review of the motion and affidavit, request for admissions and exhibits attached thereto, and the response of defendant, I find that there is no genuine issue of material fact and that plaintiff is entitled to a judgment in her favor as a matter of law for the reasons that follow.

### FACTS

The record shows that defendant made a loan to Anna Mayfield and her husband on August 4, 1986. The Mayfields received $4,716.23 in cash proceeds. Defendant also

paid off a second mortgage on the Mayfields' home with a balance of $5,371.23, paid the Mayfields' water and sewer bill of $1,428.72 and paid $870.76 then due on the Mayfields' first mortgage. To this total was added $1,070 in points or loan fees to defendant, $300 in attorney's fees to defendant's lawyer, and about $500 in other closing costs. The total was then written as a loan of $14,000 at an interest rate of 20% with a resulting future liability of $44,258.40, to be paid in monthly installments of $245.88 over 15 years. Defendant took a mortgage on the Mayfields' home at 7000 Cedar Park Avenue, Philadelphia to secure the loan. The Mayfields were given a loan disclosure statement and notice of right to cancel on July 30, 1986.

The Mayfields made the first two scheduled payments of $245.88 each in October and November, 1986. They then contacted defendant to explain that they were having difficulty paying the loan payment and their first mortgage payment of $171 on their income of $634 per month from social security and veteran's pension benefits. Defendant offered to refinance the prior loan and their first mortgage with a new loan which was written on January 19, 1987. The only new advances from this loan were $6,265.43 to pay off the first mortgage on the Mayfields' home and $160 to pay a water and sewer bill. To that were added the prior balance to defendant, a new origination fee of $1930 and about $1,500 in other closing costs. That total was written as a loan of $24,686.04 at an interest rate of 20% with a resulting future liability of $85,872.60, payable in monthly installments of $477.07. Defendant took another mortgage on the Mayfields' home to secure the loan. The only disclosure statement and notice of right to cancel given to the Mayfields concerning the new loan was received by them on December 2, 1986. According to Mrs. Mayfield's uncontested affidavit she made two payments of $911.00 each on this second loan transaction.

On October 28, 1987 counsel for the Mayfields wrote a letter to defendant and its attorney rescinding the loan under TILA, 15 U.S.C. § 1635(a), which letter was received on October 30, 1987. Defendant took no action within twenty days after the rescission letter to remove the mortgage from the Mayfields' home or to return the money already received from the Mayfields. Mrs. Mayfield filed this action on January 19, 1988 to enforce the rescission and to obtain actual and statutory damages under TILA.[1]

### PLAINTIFF'S RIGHT TO RESCIND

■ It appears from the response of defendant to plaintiff's motion that it does not contest that plaintiff has a right to rescind the loans it made to her and her husband. Nor would defendant have a basis to do so. Whenever a consumer credit transaction results in a creditor acquiring a security interest in an obligor's home, as is the case here, § 1635(a) gives the obligor "the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later ..." 15 U.S.C. § 1635(a). Section 1635(a) requires the creditor to disclose this right to rescind in accordance with regulations promulgated by the Federal Reserve Board. *Id.* Failure to properly complete the right to rescission form or to provide the consumer with the material disclosures required to be made under TILA extends the rescission period until three days after the disclosures are properly made. *Id.; Williamson v. W.E. Lafferty*, 698 F.2d 767, 768 (5th Cir.1983). If the disclosures are never properly made, the rescission period runs for three years from the consummation of the transaction. 15 U.S.C. § 1635(f); *Williamson v. W.E. Lafferty*, 698 F.2d at 768.

■ In this case, it is uncontested that defendant failed to properly complete the rescission notices and to provide plaintiff with accurate disclosures with respect to both the August, 1986 and January, 1987

---

**1.** Mr. Mayfield died on March 23, 1988.

loans. With respect to the rescission notices, the Board's regulations require creditors to provide customers with a notice of their right to rescind that specifies, *inter alia,* the precise date upon which the three day rescission period expires. 12 C.F.R. 226.23(b)(5). The rescission notices given to plaintiff with respect to both the August 1986 and the January 1987 loans failed to specify the date upon which the three day rescission period expired. Failure to specify such dates automatically violates the TILA and entitled plaintiff to rescind the loan within the three year rescission period. *Williamson v. W.E. Lafferty,* 698 F.2d at 768; *Aquino v. Public Finance Co.,* 606 F.Supp. 504, 507 (E.D.Pa.1985).

The failure of defendant to correctly make all material disclosures required to be made under 15 U.S.C. § 1638 also entitled plaintiff to rescind the loan. Section 1638 requires a creditor to disclose, *inter alia,* the extent of the collateral being taken for the loan. 15 U.S.C. § 1638(a)(9). The disclosure statements for the August, 1986 and January, 1987 loans indicated that the loans were secured by "the property being purchased" which was clearly an incorrect disclosure as these were not purchase money loans. Plaintiff and her husband purchased their home years before the present security interests in it were taken. The failure to accurately disclose a security interest taken is a material nondisclosure which also entitles a consumer to rescind a loan within the three year rescission period. *Williamson v. W.E. Lafferty,* 698 F.2d at 769; *Bookhart v. Mid–Penn Consumer Discount Co.,* 559 F.Supp. 208, 211 (E.D. Pa.1983).

The disclosure statements also failed to accurately state several other material credit terms required to be disclosed by the TILA which would have entitled plaintiff to rescind the loans. However, because the violations of the TILA already discussed were clearly sufficient to have entitled plaintiff to rescind both the August 1986 and January 1987 loans on October 28, 1987, I do not address them.

## PLAINTIFF'S RIGHT TO DAMAGES

■ Section 1640(a) of TILA provides for statutory penalties equal to twice the finance charge of the credit transaction up to a maximum of $1,000 for failing to comply with the disclosure requirements of the Act. Multiple disclosure violations made in connection with a single loan transaction entitles a person to only a single recovery. 15 U.S.C. § 1640(f). However, if a consumer rightfully exercises the right to rescind and the creditor fails to comply with its obligations under § 1635 the consumer is entitled to an additional award of damages under § 1640(a), *Aquino v. Public Finance Consumer Discount Co.,* 606 F.Supp. at 510; *In re Jones,* 79 B.R. 233 (Bankr.E.D. Pa.1987), for each transaction rescinded. *Abele v. Mid–Penn Consumer Discount Co.,* 77 B.R. 460 (E.D.Pa.1987). The right to damages, however, is subject to a one year limitations period which starts running "from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

Plaintiff is entitled to $3,000 in statutory damages. First, the record indicates that the finance charge on both the transactions far exceeded $500 and therefore plaintiff is entitled to the maximum statutory award of $1,000 per violation. The record also establishes that defendant did not comply with the requirements of § 1635 when plaintiff rightfully exercised her right to rescind the two loan transactions. Section 1635 requires a creditor to return to the obligor any money or property received from the obligor and to take any action necessary to reflect the termination of any security interest created under the credit transaction within twenty days after receipt of a notice of rescission. 15 U.S.C. § 1635(b). It is undisputed that defendant did not do either after receiving plaintiff's valid rescission notice. Therefore, plaintiff is entitled to an award of $2,000 for defendant's failure to comply with § 1635; that is $1000 for each transaction.

Plaintiff is also entitled to an award of $1,000 for the failure of defendant to make all material disclosures with respect to the January 1987 loan transaction discussed previously. However, plaintiff is not enti-

tled to, and for that reason has not requested, an award for the material nondisclosures with respect to the August, 1986 loan transaction because this action was filed more than a year after the August 1986 loan transaction and thus is untimely with respect to an award of damages for the failure to disclose.[2]

## EFFECT OF RESCISSION

The TILA provides that when an obligor exercises his right to rescission, he or she is not liable for any finance or other charge and any security interest given by the obligor becomes void upon the rescission. 15 U.S.C. § 1635(b). In addition, as I noted previously, upon receipt of the rescission notice the creditor must return any down payment or other monies it received from the obligor and take the steps necessary to reflect the termination of the security interest. *Id.* Thereafter, the obligor is to return to the creditor the property he or she received or its reasonable value. *Id.* If the creditor does not take possession of the property within twenty days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. *Id.*

█ Plaintiff argues that the failure of defendant to comply with her notice of rescission entitles her under section 1635 to the return of the payments she already made on the loans to date and to a declaration that her remaining indebtedness is extinguished. As noted above, § 1635 provides for forfeiture of the proceeds of the consumer transaction if the creditor does not take possession within 20 days after tender of the proceeds by the obligor. There is some precedent for the proposition that because § 1635 requires the obligor to tender the proceeds only after the creditor appropriately reacts to the rescission by returning the property given and satisfying any security taken within twenty days, the recalcitrance of a creditor to accept a valid

rescission obviates the obligor's requirement to tender and leaves the obligor with both a right to recover any payments made and a vesting of the proceeds of the transaction in himself without an obligation to repay it. *See Gill v. Mid–Penn Consumer Discount Co.,* 671 F.Supp. 1021, 1026 (E.D. Pa.1987), *aff'd mem.,* 853 F.2d 917 (3d Cir. 1988); *Tucker v. Mid–Penn Consumer Discount Co.,* 74 B.R. 923 (E.D.Pa.1987). However, in the majority of prior cases the courts have either explicitly held that an obligor must tender or offer to tender the proceeds of the consumer transaction before finding a forfeiture, *Bustamante v. First Fed. Sav. and Loan Ass'n,* 619 F.2d 360, 365 (5th Cir.1980); *Gerasta v. Hibernia National Bank,* 575 F.2d 580, 584 (5th Cir.1978); *Aquino v. Public Finance Co.,* 606 F.Supp. at 512, n. 10; *see also Sosa v. Fite,* 498 F.2d 114 (5th Cir.1978); or the particular circumstances of the case indicated that the consumer had tendered the proceeds in those cases where a forfeiture was found. *Arnold v. W.D.L. Investments, Inc.,* 703 F.2d 848, 853 (5th Cir. 1983); *Laubach v. Fidelity Consumer Discount Co.,* Ch. 13 Case, 77 B.R. 483, 485 (E.D.Pa.1987); *Gurst v. Philadelphia Consumer Discount Co.,* 79 B.R. 969, 973 (E.D.Pa.1987). Although mindful that the statutory language contemplates a tender by the debtor after the creditor has performed his duties, several courts that have expressly addressed whether or not a tender by the consumer is required before finding a forfeiture of the proceeds of a transaction by the creditor, have found tender to be required to insure compliance with the congressional purpose of restoring the parties to the status quo. *Bustamante v. First Fed. Sav. and Loan Ass'n,* 619 F.2d at 365; *Gerasta v. Hibernia National Bank,* 575 F.2d at 584. In this case, plaintiff does not allege, nor is there evidence of record that establishes, that plaintiff tendered the loan proceeds. Moreover, while I

**2.** The suit was timely filed with respect to the January 1987 loan transaction. The loan was consummated on January 19, 1987 and this action was filed within one year on January 19, 1988. Likewise the suit was timely filed with respect to the failure to comply with § 1635.

The violation of § 1635 occurred on the twenty-first day after receipt of plaintiff's rescission letter, *Bookhart v. Mid–Penn Consumer Discount Co.,* 559 F.Supp. at 212, that is on November 20, 1987. Thus, the suit was timely on January 19, 1988.

find from the uncontradicted evidence of record that defendant's conduct was questionable in that it was extremely careless in complying with the TILA statutory requirements and charged plaintiff, who was in a desperate credit situation, excessive settlement charges and an unconscionable interest rate far above the prevailing market rate thereby placing her home in jeopardy, there is no real evidence of record that defendant tried to deceive or cheat plaintiff. Evidence of deceit is a factor that may be considered in determining whether the equitable remedy of forfeiture is appropriate. *See Laubach v. Fidelity Consumer Discount Co.*, 77 B.R. at 485; *Gurst v. Philadelphia Consumer Discount Co.*, 79 B.R. at 979. In the absence of evidence of fraud or deceit by defendant and of a tender of the proceeds by plaintiff, I conclude that plaintiff has a a continuing duty to return the proceeds of the loans. It remains to be decided, however, the amount of proceeds plaintiff must return and how such amount must be paid.

Plaintiff contends that if I find that defendant has not forfeited the loan proceeds, she is only required under the TILA to repay the amount of loan proceeds she actually received and not the amount that defendant advanced on her behalf to pay off the first and second mortgages on her home and the outstanding water bills or the amount advanced for closing costs on the present mortgage. I agree with plaintiff that she is not liable for the finance charge or any of the other charges related to the credit transactions such as, for example, the charges for title insurance, settlement and recording fees. The TILA provides that after rescission, the consumer "is not liable for any finance charge or other charge", 15 U.S.C. § 1635(b). The meaning of this provision is explained in the Official Staff Commentary of the Federal Reserve Board, which states that the consumer need not pay:

finance charges already accrued, as well as other charges such as application or commitment fees or fees for the title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.

Federal Reserve Board, Official Staff Commentary § 226.23(d)(2)1. Federal Reserve Board interpretations of the TILA are binding on courts unless they are "demonstrably irrational". *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980).

I disagree with plaintiff that she is not required to repay that amount that defendant advanced to pay off the first and second mortgages on plaintiff's home and her outstanding water and sewer bills. Plaintiff appears to argue that the amounts advanced to pay off the mortgages and water and sewer bills should also be included in the "other charges" that § 1635(b) provides need not be repaid. I cannot agree. The Official Staff Commentary set out above makes clear that the "other charges" referred to in § 1635(b) are the costs related to the credit transaction itself such as fees for a title search or an appraisal or commitment fees which charges would not have been incurred but for the credit transaction. The money advanced to discharge plaintiff's indebtedness on the two preexisting mortgages and for the water and sewer bills was as surely delivered to plaintiff as if defendant had delivered such amount payable to plaintiff and plaintiff, in turn, had endorsed it over to pay her bills. *See Powers v. Sims and Levin*, 542 F.2d 1216, 1220 (4th Cir.1976); *Clemmer v. Liberty Fin. Planning, Inc.*, 467 F.Supp. 272, 276 (W.D.N.C.1979). Thus, I find that plaintiff is liable to repay both the amount of proceeds which she actually received, $4,716.23 and the amounts advanced by defendant to pay off plaintiff's previous mortgage obligations, $12,507.43, and plaintiff's water and sewer bills, $1588.72, for a total of $18,812.38.[3] Of course, the amount

---

**3.** In the August, 1986 loan transaction plaintiff received $4716.23 in loan proceeds and defendant paid off $1,428.72 in water and sewer bills and $5371.23 to pay off the second mortgage on plaintiff's home and $870.76 then presently due on plaintiff's first mortgage. In the January,

plaintiff has already paid defendant, $2313.76 [4], and the amount plaintiff paid at the closing on the August, 1986 loan, $385.00 [5], shall be deducted from that amount. Thus, the total amount plaintiff must repay defendant is $16,113.62. However, in view of the Congressional purpose of restoring the parties to the status quo ante, I will order plaintiff to repay such amount to defendant at $171.00 per month, which was the amount of her monthly mortgage payments prior to the two loan transactions.

### ATTORNEY'S FEES AND COSTS

Plaintiff requests and is entitled to, having succeeded in this action, an award of reasonable attorney's fees and costs under 15 U.S.C. § 1640(a)(3). Therefore I will order that plaintiff submit a petition for an award of attorney's fees and costs.

An appropriate order follows.

### ORDER

AND NOW, to wit, this 30th day of March, 1989, upon consideration of the motion of plaintiff for summary judgment and the response of defendant thereto, it is hereby ORDERED and DECREED for the reasons stated in the foregoing Memorandum that:

1. Plaintiff's motion for summary judgment is GRANTED and judgment is ENTERED in favor of plaintiff Anna Mayfield and against defendant Vanguard Savings & Loan Ass'n in the following respects:

(a) The transactions between plaintiff and defendant dated August 4, 1986 and January 19, 1987 were validly rescinded by plaintiff on October 28, 1987.

(b) All monies plaintiff paid to defendant under the transactions prior to the rescission, $2,698.76, shall be credited exclusively against the amount financed of $18,-812.38. Plaintiff shall return to defendant the difference between the amount she has already paid and the amount financed, i.e. $16,113.62. Plaintiff may pay this amount to defendant in monthly installments of not less than $171.00.

(c) All security interests given or extended by plaintiff under the August 4, 1986 and January 19, 1987 transactions are void. Defendant has twenty (20) days from the date of this order, until April 19, 1989, to take the necessary action to reflect termination of all security interests in the premises known as 7000 Cedar Park Avenue, Philadelphia County, Pennsylvania, including satisfaction of all outstanding mortgages secured by said premises; in addition, all documents reflecting such security interests shall be delivered to plaintiff by defendant marked satisfied including the mortgages and any related notes, bonds or warrants within thirty five (35) days from the date of this order or May 4, 1989.

(d) Defendant shall pay to plaintiff $3,000.00 in statutory damages under 15 U.S.C. § 1640 on or before April 19, 1989, except that plaintiff may elect to have this amount credited against her remaining indebtedness to defendant for the unpaid balance of the amount financed;

(e) Plaintiff is directed to submit a petition for a reasonable attorney's fee and costs on or before April 19, 1989 and defendant must file its response thereto by May 1, 1989 or the issue will be decided by the Court as uncontested.

---

1987 loan transaction defendant paid off the first mortgage in the amount of $6265.43 and for water and sewer bills of $160.

**4.** Plaintiff's counsel calculated the amount already paid on the loans by plaintiff as $2,301.00. See Plaintiff's Motion for Summary Judgment at p. 20. However, plaintiff's affidavit in support of the motion states that she made two payments of $245.88 each on the August, 1986

loan and two payments of $911.00 each on the January, 1987 loan, which, according to my calculations, equals $2313.76.

**5.** Plaintiff's counsel states in the motion for summary judgment that plaintiff paid $390 at the closing on the August, 1986 loan. However, the settlement sheet for such loan indicates that plaintiff paid $385.