**In the Matter of Walter ABELE, Eva Abele**

v.

**MID–PENN CONSUMER DISCOUNT.**

Civ. A. No. 86–3811.

United States District Court, E.D. Pennsylvania.

Aug. 19, 1987.

David A. Searles, Philadelphia, Pa., for debtors Abeles.

Arthur Matusow, Philadelphia, Pa., for creditor Mid-Penn Consumer Discount.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

In this truth-in-lending case, Mid-Penn Consumer Discount ("Mid-Penn") appeals the bankruptcy court's grant of summary judgment in favor of Walter and Eva Abele. This court has jurisdiction under 28 U.S.C. § 158(a).

### I.

Between February 12, 1980 and January 14, 1983, the Abeles entered into eight loan transactions with Mid-Penn. As part of each transaction, the Abeles signed a mortgage on their home in the amount of that particular loan. Each mortgage was recorded in the Office of the Recorder of Philadelphia County.

By letter dated February 6, 1984, the Abeles' attorney notified Mid-Penn that, pursuant to the Truth in Lending Act, the Abeles were rescinding the last five transactions, *i.e.*, those dated April 10, 1981, September 25, 1981, February 8, 1982, August 9, 1982 and January 14, 1983. Mid-Penn received the notice of rescission on February 9, 1984. However, Mid-Penn took no action to terminate any security interest it held in the Abeles' home. When the Abeles filed their bankruptcy petition on May 2, 1984, eight mortgages on the Abeles' home in Mid-Penn's favor remained on the public record.

After the Abeles filed for bankruptcy, Mid-Penn filed a proof of claim in the amount of $8,228.17. The Abeles filed a complaint objecting to Mid-Penn's secured claim. The complaint alleged that Mid-Penn had violated the Truth in Lending Act, and sought an order awarding statutory damages and reducing Mid-Penn's claims pursuant to the Act's rescission and recoupment provisions. The complaint also sought a declaration that Mid-Penn's liens on the Abeles' home in excess of the property's fair market value were void. Some time thereafter, the Abeles moved to amend their complaint to enumerate Mid-Penn's alleged truth-in-lending violations and to increase the amount of damages claimed. Mid-Penn opposed the motion.

Before the bankruptcy court ruled on their motion to amend, the Abeles moved for summary judgment. In support of their motion, they argued that: (i) the truth-in-lending disclosures given by Mid-Penn were inaccurate, in that Mid-Penn failed to disclose that each of the Abeles' loans was secured not only by a mortgage of even date but by all previous mortgages; (ii) those inaccurate disclosures constituted material truth-in-lending violations; (iii) therefore, when the Abeles sent Mid-Penn a rescission letter on February 6, 1984, they had a right to rescind the transactions of April 10, 1981 through January 14, 1983; (iv) Mid-Penn violated truth-in-lending requirements when, after receipt of the Abeles' rescission letter, it failed to satisfy the mortgages that the Abeles gave Mid-Penn in connection with each of the rescinded credit transactions; and (v) because there were already encumbrances on the Abeles' home in excess of its fair market value before Mid-Penn acquired any of its mortgages, whatever claim Mid-Penn had against the Abeles should be deemed unsecured.

Mid-Penn filed a counter motion for summary judgment. In its brief, it conceded that the Abeles were entitled to a determination that its claim against them was an unsecured one. However, it argued that, as to the Abeles' truth-in-lending claims, it was entitled to judgment as a matter of law.

The crux of Mid-Penn's argument was that, under the defeasance clause contained in each of the Abeles' mortgages, the mortgages became void when the Abeles paid off the loan of even date. Pointing to the undisputed fact that the Abeles used some of the proceeds of each refinancing to pay off their previous loan in its entirety, Mid-Penn argued that, with the completion of each refinancing, no previous mortgages existed. Thus, Mid-Penn contended, notwithstanding any failure on its part to mark as satisfied the Abeles' first seven mortgages, there could have been no truth-in-lending violation because, *ipso facto*, Mid-Penn could not have been required to disclose mortgages which by their terms were no longer extant.

Mid-Penn contended, in addition, that at the time the Abeles sought to exercise their right to rescind, the only transaction that had not been cancelled was the last one. As to that transaction, Mid-Penn argued that even if it failed accurately to disclose the security interest, such failure did not, under the truth-in-lending regulations then in effect, entitle the Abeles to rescind the transaction. Finally, Mid-Penn incorporated by reference its brief in opposition to the Abeles' motion to amend, wherein it contested the availability of a recoupment remedy and the amount of statutory damages claimed by the Abeles.

In a reply brief, the Abeles conceded that the revised truth-in-lending regulations were effective at the time of the 1983 credit transction. They also conceded that, under the revised regulations, the inaccurate disclosure of the security interest did not entitle them to rescind. They accordingly limited their claims to the transactions of April 10, 1981 through August 9, 1982.

The bankruptcy court granted the Abeles' summary judgment motion without opinion. Despite the Abeles' concession as to the 1983 transaction, the court granted relief on that transaction as well as on all of the Abeles' other claims. It entered an order declaring that the Abeles had validly rescinded their last five credit transactions with Mid-Penn, awarding each of the

Abeles statutory damages of $4,000.00 for Mid-Penn's failure to rescind the 1981 and 1982 transactions, and awarding the Abeles jointly statutory damages of $1,000.00 for Mid-Penn's failure to rescind the 1983 transaction. The court also awarded each of the Abeles a recoupment of $1,000.00, and allowed Mid-Penn's claim as an unsecured one in the amount of $478.15. The court did not enter an order disposing of the Abeles' motion to amend. This appeal followed.

## II.

On appeal, Mid-Penn renews the arguments that it made in the bankruptcy court and which I have heretofore enumerated. The Abeles, likewise, renew their previous contentions. In addition, the Abeles contend that the bankruptcy court properly granted summary judgment in their favor because Mid-Penn violated truth-in-lending requirements by failing to disclose hidden finance charges, thereby entitling the Abeles to rescind each of the transactions at issue.

Whether the bankruptcy court properly granted the Abeles' motion for summary judgment is a question of law. Thus, my review is plenary.

## III.

I turn first to the question of whether the bankruptcy court erred when it awarded the Abeles statutory damages in connection with the 1981 and 1982 transactions. The Abeles have premised their right to statutory damages on Mid-Penn's failure to take any action in response to their rescission letter of February 6, 1984. Accordingly, the threshold issue is whether, at the time they sent their rescission letter, the Abeles were entitled to rescind the 1981 and 1982 transactions.

### A.

Under the Truth in Lending Act ("TILA"), Pub.L. No. 90–321, 82 Stat. 146 (1968) (amended 1982), and its implementing regulations, known as Regulation Z (previously codified at 12 C.F.R. §§ 226.1 —.1503 (1982)), as they existed at the time of the 1981 and 1982 transactions,[1] when a creditor took a security interest in a borrower's residence as part of a credit transaction, the borrower had the right to rescind the transaction within three days of its consummation. *See* Pub.L. No. 90–321, § 125(a), 82 Stat. at 152; Regulation Z, § 226.9(a) (previously codified at 12 C.F.R. § 226.9(a)). More importantly for purposes of this case, when the creditor had not made all the material disclosures required by the TILA, the right to rescind extended until such time as the creditor delivered to the borrower a statement containing the requisite disclosures. Pub.L. No. 90–321, § 125(a), 82 Stat. at 152. As regards the disclosure of security interests, the TILA provided that a creditor had to give "[a] description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates." *Id.* at § 128(a)(10), 82 Stat. at 155.

After a borrower exercised the right to rescind, a creditor was required to return any downpayment or other money given by the borrower and to take any action "necessary or appropriate to reflect the termination of any security interest created under the transaction." *Id.* at § 125(b), 82 Stat. at 153. Once the creditor performed those obligations, the borrower was obliged to tender to the creditor any property the creditor had delivered as part of the trans-

---

1. In 1980, Congress passed the Truth in Lending Simplification and Reform Act ("TILSRA"), 15 U.S.C. §§ 1601–1693, which amended the Truth in Lending Act. In 1981, the Federal Reserve Board promulgated new implementing regulations, commonly known as Revised Regulation Z, 12 C.F.R. §§ 226.1—.29, to replace the former regulations, known simply as Regulation Z. Compliance with the amended statute and regulations became mandatory on October 1, 1982.

Until then, compliance was optional, but creditors were not permitted to mix compliance with the old and new regulations in any particular credit transaction. *See* Official Staff Commentary to Regulation Z, 46 Fed.Reg. 20,848, 20,849 (1981).

Mid-Penn has argued that the new statute and regulations governed the Abeles' right to rescind the 1981 and 1982 transactions. I disagree, for the reasons I discuss *infra* pp. 465–67.

action. *Id.* at § 125(b), 82 Stat. at 153. Finally, notwithstanding a creditor's failure to make all required material disclosures, a borrower's right to rescind expired three years after the consummation of the transaction or upon the borrower's sale of the residence, whichever first occurred. Pub.L. No. 93–495, § 405, 88 Stat. 1517, 1517–18 (1974) (amending section 125 of the Truth in Lending Act by adding this subsection).

### B.

■ Before the bankruptcy court and again before me, the Abeles contend that they retained the right to rescind the 1981 and 1982 transactions for three years after their consummation because Mid-Penn failed to make the material disclosure that each loan was secured not only by a mortgage of even date but by all previous mortgages. The argument that Mid-Penn advances most vigorously in opposition is that, since with each new credit transaction the Abeles paid off their previous loan in its entirety, the mortgage connected with each loan was automatically void under the mortgage's defeasance clause. Thus, Mid-Penn argues, its disclosure statements were accurate because, as represented in those statements, each loan was secured only by a mortgage of even date.[2]

Mid-Penn's argument is specious, because it relies on a conveniently selective reading of the defeasance clauses at issue. Mid-Penn represents that each defeasance clause provided that the mortgage would become void upon payment of the loan of even date. In fact, each defeasance clause provided that the mortgage would become void upon payment of the loan of even date and of any future advances.[3] Because with each refinancing Mid-Penn loaned the Abeles money in excess of the amount of their previous loan, the future advances provision of each previous mortgage would, by its terms, prevent the mortgage from becoming void, notwithstanding the Abeles' payment of the loan of even date.

Besides its apparent attempt to wish away the now inconvenient future advances provision, Mid-Penn makes no cogent argument as to why that provision does not have the effect that it purports to have, *i.e.*, to keep each mortgage extant for as long as the Abeles owe any money to Mid-Penn. Mid-Penn does not, for example, point to any evidence of record from which a reasonable fact finder could conclude that it waived its security interest under the future advances provision of the previous mortgage each time it entered into a new credit transaction with the Abeles.

The only evidence submitted by Mid-Penn ostensibly to support its position is a copy of a complaint, which Mid-Penn represents in its brief was filed in state court in 1983, in which Mid-Penn sued the Abeles for the amount of the unpaid balance on their January 14, 1983 loan. Mid-Penn contends that this complaint is significant because "[i]f ever Mid-Penn was going to

**2.** In the disclosure statements accompanying the 1981 and 1982 transactions, Mid-Penn described its security interest in the transaction as follows:

This loan is Secured by a MORTGAGE and NOTE of even date on the property described below and the proceeds thereof to secure this and any future loan.

. . . . .

. . . REAL ESTATE—Location [:] 307 E. Lehigh Ave[.,] Phila.[,] PA.

**3.** Each mortgage at issue contained the following provision:

Whereas, Mortgagor, by an Obligation bearing even date herewith, is bound unto the Mortgagee in the penal sum of [amount of loan of even date, including finance charge] Dollars, which Obligation provides in part as follows: "The Condition of this Obligation is such, That if the Obligor shall . . . Pay unto Obligee the principal sum of [amount of loan of even date, including finance charge] Dollars, (and any future advances made to Obligor or for the protection of the Mortgage security) . . . Then the above Obligation to be void, or else to remain in full force and effect."

And Whereas, that Obligation in its entirety, is incorporated herein with the same effect as if fully set forth.

Now, this Indenture Witnesseth, that the Mortgagor, in consideration of the principal sum and for securing performance of all provisions of the said Obligation . . . does hereby grant and convey unto the Mortgagee: [the lot and building at 307 East Lehigh Avenue, Philadelphia, Pennsylvania].

assert a claim for more than its security interest ... this was certainly the opportunity. However, Mid-Penn sued only for the unpaid balance of the January 14, 1983 loan, plus attorney's fees."

This contention misses the point entirely. The complaint which Mid-Penn submitted does not even purport to specify which mortgages secure the loan upon which Mid-Penn sued. Moreover, that Mid-Penn did not, and indeed could not, sue on any loan but the last one does not mean that the security interests which were created in connection with the previous loans were void. To the contrary, even though the previous loans were paid, the previous security interests remained in effect, by virtue of the future advances provision in each mortgage, precisely because the Abeles still owed Mid-Penn money on the last loan. Accordingly, insofar as Mid-Penn's argument rests upon the operation of the mortgages' defeasance clause, the argument fails.

### C.

Mid-Penn next argues that, even if all eight mortgages remained in effect, its disclosures of the security interests in connection with each loan complied with truth-in-lending requirements. Its argument on this point is somewhat abstruse. Mid-Penn does not articulate the reasons why it believes its disclosures were accurate. It merely sets forth, as though it is dispositive, the current regulation as to the disclosure of a creditor's security interests: "For each transaction, the creditor shall disclose ... [t]he fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type." 12 C.F.R. § 226.18. Apparently, Mid-Penn has an argument, the particulars of which it leaves to me to divine, that the current regulation governed the disclosures Mid-Penn was required to make in the 1981 and 1982 transactions and that the disclosures it made as to its security interests complied with that regulation.

Mid-Penn also argues, much more clearly, that even if its disclosures as to the security interests for the 1981 and 1982 transactions were inaccurate, those disclosures were not material ones, and hence any inaccuracies did not give the Abeles a continuing right to rescind those transactions. In support of this argument, Mid-Penn relies on the current truth-in-lending regulations [4] which, for purposes of giving a borrower a continuing right to rescind, define material disclosures as "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule." 12 C.F.R. § 226.23 & n. 48.

Both of these arguments raise the threshold question of whether the parties' rights and duties as to the 1981 and 1982 transactions are governed by the current regulations or by the previous, now superseded, ones. Compliance with the current regulations did not become mandatory until October 1, 1982, after all the transactions at issue had been consummated. However, as Mid-Penn points out, the Official Staff Commentary to Revised Regulation Z provided that, in the period between the announcement of the revised statute and regulations and the date upon which compliance with the new law became mandatory, creditors had the option of complying with either the old or the new statute and regulations. *See* 46 Fed.Reg. 50,288, 50,290 (1981); 46 Fed.Reg. 20,848, 20,849 (1981); *see also* S.Rep. No. 23, 97th Cong., 1st Sess. 5, *reprinted in* 1981 U.S.Code Cong. & Admin.News 74, 78.

But the commentary also made clear that creditors could not simply pick and choose beneficial requirements from both the old and the new regulations with which to comply. Rather, in any one transaction, a creditor had to follow all the requirements of either the old or the new regulations. *See*

---

**4.** At no point has Mid-Penn contended that, under the superseded regulations, *see supra* pp. 463–64 & n. 1, the disclosure of security interests was not material as regards the continuing right to rescind. Therefore, I do not address that issue. For an opinion holding that such a disclosure was a material one under the superseded regulations, see *Bookhart v. Mid- Penn Consumer Discount Co.*, 559 F.Supp. 208, 211 (E.D.Pa.1983).

46 Fed.Reg. at 20,849. As an exception to that general rule, a creditor could, even though complying with the old disclosure requirements, choose to comply with the revised rescission regulations. 46 Fed. Reg. at 50,290.

At issue here is whether, as to the Abeles' 1981 and 1982 transactions, Mid-Penn had exercised its option to comply with the disclosure and/or rescission requirements of the revised truth-in-lending regulations. Regarding the steps a creditor had to take to show that it had converted to the new regulations, the commentary provided that the creditor had to do one simple thing: comply with the requirements of the revised regulations. *Id.*

■ Of course, that a creditor failed to comply with a certain provision of the old regulations does not, by itself, evidence an election by the creditor to comply with the new ones. *See Cox v. First National Bank of Cincinnati,* 751 F.2d 815, 822 (6th Cir.1985). Rather, a creditor has evidenced its election to comply with the revised regulations when, taken as a whole, its conduct in regard to the transaction at issue, *e.g.,* the information it gave in the disclosure and/or rescission statements it used in the transaction, show that the creditor did, or at least was attempting to, comply with the requirements of the new law. *See id.; cf.* 46 Fed.Reg. at 50,290.

■ As to Mid-Penn's 1981 and 1982 transactions with the Abeles, the evidence of record shows no such thing. The only evidence submitted by either the Abeles or Mid-Penn from which a fact finder could determine whether Mid-Penn had elected to comply with the new regulations is the disclosure statements that Mid-Penn gave the Abeles in connection with those transactions. Those disclosure statements show

plainly that Mid-Penn had chosen to comply with the old rather than the revised regulations,[5] and Mid-Penn does not point to a shred of evidence from which a reasonable fact finder could draw a contrary conclusion.

It is true that, even if Mid-Penn had not elected to comply with the revised disclosure regulations, it could nonetheless have elected to comply with the revised rescission regulations. *See supra* p. 466. However, I find no evidence in the record which even suggests that Mid-Penn did, in fact, elect to comply with the revised rescission regulations in connection with the 1981 and 1982 transactions, and Mid-Penn does not point to any. If Mid-Penn had converted to the new rescission requirements, it would be easy enough to prove, since the content of the required notice as to the right of rescission under the superseded regulations differs from the required content under the current ones. *Compare* Revised Regulation Z, 12 C.F.R. § 226.23(b) *with* Regulation Z, § 226.9(b) (previously codified at 12 C.F.R. § 226.9(b)).

In short, there is an absolute dearth of evidence that Mid-Penn had, as to the Abeles' 1981 and 1982 transactions, elected to comply with the new disclosure and/or rescission regulations. Although Mid-Penn is correct insofar as it argues that it could have made such an election, the only possible inference from the evidence of record is that it chose not to do so. As I have explained, *see supra* p. 466, it is plain from the official commentary and the case law that the right of election was not meant to be used by a creditor as a *post hoc* justification for its failure to comply with the regulations that were in effect in 1981 and 1982. This appears to be precisely what Mid-Penn is now attempting to do.[6]

---

**5.** For example, those disclosure statements do not describe the terms "amount financed," "finance charge," "annual percentage rate" and "total of payments" as is required under the revised regulations. *See* 12 C.F.R. § 226.18(b), (d), (e), (h). Moreover, they do not contain the required statements as to whether a penalty may be imposed if the obligation is prepaid in full, *see id.* § 226.18(k), and as to Mid-Penn's assumption policy. *See id.* § 226.18(q). *See generally Cox v. First National Bank of Cincinna-*

*ti,* 751 F.2d 815, 822 (6th Cir.1985) (comparing requirements under the old and new regulations). Notably, all these requirements are met in the disclosure statement which Mid-Penn gave the Abeles in 1983, after compliance with the new law became mandatory.

**6.** I will address briefly the even more specious argument made by Mid-Penn that its conduct did not violate truth-in-lending regulations because the official commentary stated that "the

I conclude that, as a matter of law, the previous, now superseded, regulations governed the parties' rights and duties as to the 1981 and 1982 transactions. Accordingly, I reject Mid-Penn's argument that the bankruptcy court erroneously granted summary judgment in the Abeles' favor insofar as that argument rests upon the premise that Mid-Penn complied with the current regulations, rather than the superseded ones.

### D.

Mid-Penn's final argument as to the 1981 and 1982 transactions is that, once the Abeles paid in full the loans that were connected with those transactions, their right of rescission no longer existed. As a related argument, Mid-Penn contends that, once the loans had been paid, there were no funds it could have tendered to the Abeles in response to their rescission letter. Thus, Mid-Penn submits, it violated no truth-in-lending duty when, upon receipt of the Abeles' letter, it failed to take any action.

In large part, Mid-Penn bases these arguments on the premise that, once the Abeles paid a loan, the mortgage of even date became void under the defeasance clause, and therefore that the entire transaction was cancelled. However, as I have heretofore explained, that premise is utterly fallacious. *See supra* pp. 464–65.

That premise failing, there is no merit to Mid-Penn's arguments. It is unclear whether Mid-Penn also contends that, even if the mortgages remained in effect, the Abeles were not entitled to rescind the transactions because they had paid off their loans. If that is Mid-Penn's position, I disagree.

 The purpose of the right of rescission is to protect borrowers from having their homes placed in jeopardy by the operation of the security interest provisions

of a credit transaction. *See N.C. Freed Co. v. Board of Governors of the Federal Reserve System*, 473 F.2d 1210, 1216 (2d Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 48, 38 L.Ed.2d 61 (1973); *see also* Pub.L. No. 90–321, § 125(a), 82 Stat. at 152 (right of rescission applies only to transactions in which a security interest is retained or acquired in a borrower's residence). That being the case, it would make no sense to hold that the right of rescission was extinguished when the Abeles paid off their 1981 and 1982 loans. As long as the mortgages created in connection with those loans remained in effect, the *sine qua non* for the right of rescission still existed.

Mid-Penn does not give reasons or cite authority for its argument to the contrary, and I find nothing in the statute or case law to support its position. Although the TILA enumerated the circumstances under which the right to rescind expired, it did not provide that the right would be extinguished upon repayment by the borrower of the credit extended. *See* Pub.L. No. 93–495, § 405, 88 Stat. at 1517–18. Nor is there any merit to the contention that, because the Abeles' loans had been paid, Mid-Penn was under no duty to take any action in response to the Abeles' rescission letter. Assuming, without deciding, that Mid-Penn is correct in asserting that because the Abeles' loans were paid, it did not have to tender any funds in response to their rescission letter, it was still obligated to take any action "necessary or appropriate to reflect the termination of any security interest created under the transaction." *Id.* at § 125(b), 82 Stat. at 153. Clearly, Mid-Penn was obligated under that provision to mark the Abeles' mortgages satisfied in response to their rescission letter. However, it is undisputed that Mid-Penn failed to do so.

---

revised regulation may be relied on during the transition period to determine if any disclosures are required for a particular transaction." It is clear from the discussion and the examples given as to the application of the provision cited by Mid-Penn that it was referring to entire categories of transactions not covered by the new regulations, not to whether a particular disclo-

sure was required for a type of transaction that the new regulations still covered. *See* 46 Fed. Reg. at 50,290. There is no question that the type of credit transaction at issue here is covered by the current regulations, and thus that the provision cited by Mid-Penn is completely inapposite.

*E.*

■ Underlying many of Mid-Penn's arguments is the unarticulated contention that, even if it failed to disclose retained mortgages or to mark those mortgages satisfied in response to the Abeles' rescission letter, those failures were, at most, technical violations of the TILA. However, the law is clear that the TILA must be strictly construed and liability imposed for any violation, no matter how technical. *See, e.g., Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 248–50 (3d Cir.1980).

Based on the undisputed evidence of record, I conclude that the Abeles had a right to rescind the 1981 and 1982 transactions, and that Mid-Penn violated the TILA by failing to take any action in response to the Abeles' rescission letter. Accordingly, I hold that the bankruptcy court did not err when it granted summary judgment in the Abeles' favor as to the 1981 and 1982 transactions.

*IV.*

■ I turn next to the question of whether the bankruptcy court erred when it awarded the Abeles statutory damages in connection with the 1983 transaction. I conclude that it did.

As I have previously set forth, the Abeles originally contended before the bankruptcy court that they were entitled to rescind the 1983 transaction because Mid-Penn failed accurately to disclose its security interest in the transaction. However, in a later brief, the Abeles conceded that, under section 226.23 of the current truth-in-lending regulations, 12 C.F.R. § 226.23 & n. 48, which had become mandatory by the time of the 1983 transaction, Mid-Penn's failure accurately to disclose its security interest did not give the Abeles a continuing right to rescind. The Abeles "thus limit[ed] their claims to the four ... transactions [which took place in 1981 and 1982]." Clearly, since the Abeles had withdrawn their claim for relief as to the 1983 transaction, it was error for the bankruptcy court to enter summary judgment in their favor on that claim.

On appeal, the Abeles attempt to benefit from that error by raising a ground for relief as to the 1983 transaction on which, they contend, the bankruptcy court could properly have entered judgment in their favor. They claim that in all the disputed transactions, including the one in 1983, Mid-Penn failed to disclose hidden finance charges which, even under the current truth-in-lending regulations, gave them a continuing right to rescind the transaction.

Mid-Penn points out, and the Abeles do not dispute, that the issue of Mid-Penn's alleged failure to disclose hidden finance charges was not raised below. However, the Abeles argue that it is proper for this court to consider the issue on appeal because, as the prevailing parties, they are free to urge any grounds for affirmance upon which judgment in their favor might properly have been entered, even if those grounds were not relied upon by the court below. In support of this proposition, the Abeles cite *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977), *California Bankers Association v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974) and *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

The Abeles' reliance on those cases is misplaced. While the Abeles cite language from those cases which appears favorable to them, they fail to point out that, in each case, the Court's discussion made clear that the grounds for affirmance urged by the prevailing party had been presented to, even though not necessarily relied upon by, the courts below. *See New York Telephone Co.*, 434 U.S. at 166 n. 8, 98 S.Ct. at 369 n. 8; *California Bankers Association*, 416 U.S. at 71, 94 S.Ct. at 1522; *Dandridge*, 397 U.S. at 475 n. 6, 90 S.Ct. at 1156–57 n. 6. Here, not only did the Abeles fail to raise the hidden finance charge argument below but, when the bankruptcy court entered its order, they had presented no claim for relief as to the 1983 transaction, since by then they had stated on the record that they were limiting their claims to the 1981 and 1982 transactions.

I am aware that, in certain exceptional circumstances, *i.e.*, when justice or the public interest so warrants, a court may consider issues raised for the first time on appeal. *See, e.g., Franki Foundation Co. v. Alger-Rau & Associates*, 513 F.2d 581, 586 (3d Cir.1975). I find no such exceptional circumstances here. Moreover, I believe that it would be manifestly unjust to uphold the bankruptcy court's judgment as to the 1983 transaction based on the Abeles' hidden finance charge argument. The Abeles maintain that judgment in their favor on this issue is warranted by the facts of record. Assuming, without deciding, that that is true, the logic of the Abeles' argument is still seriously flawed. Since the Abeles did not raise this issue below, Mid-Penn was deprived of the opportunity to submit evidence in support of its contention that, in fact, it did not fail to disclose hidden finance charges. *Cf. Universe Tankships, Inc. v. United States*, 528 F.2d 73, 76 (3d Cir.1975) (a party may not, on appeal, advance a theory of recovery at variance with its trial strategy if the opposing party would be prejudiced thereby).

Accordingly, I will not consider the Abeles' hidden finance charge argument. Therefore, there is no ground upon which the bankruptcy court's entry of judgment in the Abeles' favor as to the 1983 transaction may be affirmed.

## V.

Finally, I turn to Mid-Penn's arguments as to the relief ordered by the bankruptcy court. Mid-Penn argues that the bankruptcy court erred in allowing a recoupment and in awarding the Abeles $8,000.00 rather than $1,000.00 in statutory damages for the 1981 and 1982 transactions.

### A.

■ Mid-Penn argues that the Abeles are not entitled to a recoupment because recoupment is a defensive pleading upon which no affirmative judgment may be had. Although Mid-Penn's characterization of the nature of recoupment is correct, it does not obviate the relief by way of recoupment ordered by the bankruptcy court.

As I have previously held, a debtor may assert a truth-in-lending recoupment claim in a complaint objecting to a creditor's proof of claim. *Werts v. Federal National Mortgage Association*, 48 B.R. 980, 983–84 (E.D.Pa.1985). This is precisely what the Abeles have done here. Mid-Penn's only argument as to why a recoupment should nonetheless not be permitted is that its claim against the Abeles has been deemed unsecured. However, Mid-Penn fails to point out, and I fail to see, what difference that makes. That the Abeles' recoupment will reduce the amount of Mid-Penn's unsecured claim, rather than the amount of a secured one, certainly does not turn the recoupment into an affirmative judgment. Accordingly, I reject Mid-Penn's argument, and conclude that the bankruptcy court did not err in awarding the Abeles a recoupment against Mid-Penn's claim.[7]

### B.

■ As to statutory damages, Mid-Penn's first argument is that the Abeles are entitled to no more than $1,000.00 because that is the amount of statutory damages they sought in their original complaint. Mid-Penn submits that, although the bankruptcy court never ruled on the Abeles' motion to amend the complaint, *see supra* pp. 461–63, it *de facto* permitted the amendment by allowing recovery on five separate truth-in-lending violations. Mid-Penn argues that allowing such amendment was erroneous, because any claim for additional damages was a new claim, and thus was barred by the applicable statute of limitations.

---

7. Mid-Penn has not argued that the amount of the recoupment was incorrect, nor that the Abeles are not entitled to both recoupment and statutory damages. On the latter issue, I pause only to note that the Abeles' recovery of statutory damages for Mid-Penn's failure to honor their rescission does not bar them from obtaining relief for the underlying disclosure violations. *See Aquino v. Public Finance Consumer Discount Co.*, 606 F.Supp. 504, 510–11 (E.D.Pa. 1985). Although the record is not clear on this point, I presume that it was for those violations that the bankruptcy court awarded the recoupment.

Mid-Penn's argument is ridiculous. Not surprisingly, it cites no authority for the novel proposition that increasing the amount of damages sought is a new claim. Of course, that simply is not correct. In their original complaint, the Abeles alleged that Mid-Penn violated the TILA by failing to rescind the five credit transactions dated April 1981 through January 1983. Clearly, any amendment seeking additional damages for that failure is a claim arising out of the same transactions that the Abeles set forth in the original complaint, and therefore relates back to the date the original complaint was filed. *See* Bankr.R. 7015; Fed.R.Civ.P. 15(c). Moreover, besides specifically seeking $1,000.00 in statutory damages, the Abeles requested in their original complaint that the court award any further relief that it deemed necessary and proper. Thus, even without allowing amendment, there was no bar to the bankruptcy court awarding the Abeles more than $1,000.00 in statutory damages.

 Mid-Penn's second argument is that the Abeles are entitled to no more than $1,000.00 because they sent only one letter demanding rescission and therefore any failure to rescind was only one truth-in-lending violation. As with its previous argument, Mid-Penn cites no authority in support of its position.

I find nothing in the statute, regulations or case law suggesting that recovery should be based on the number of rescission letters sent, rather than on the number of transactions rescinded. Nor, when they have entered multiple credit transactions, do I find anything limiting to one the number of times a borrower can recover damages for a creditor's truth-in-lending violations. *See Brown v. Marquette Savings & Loan Association,* 686 F.2d 608, 615–16 (7th Cir.1982) (borrowers are entitled to a separate award for each

new transaction in which there are truth-in-lending violations).

Here, the Abeles attempted by letter to rescind five separate credit transactions. As to four of those transactions, I have held that Mid-Penn wrongfully failed to take any action in response to their letter. Accordingly, the Abeles are entitled to recover for Mid-Penn's failure to rescind each of those four transactions, and the bankruptcy court did not err in awarding separate statutory damages for each one.[8]

### VI.

For the reasons set forth in the foregoing opinion, I affirm in part and reverse in part the judgment of the bankruptcy court. I will remand the case for entry of judgment consistent with this opinion. An appropriate order follows.

---

**8.** Mid-Penn has also argued that the current statute, rather than the superseded one, should govern the amount of statutory damages which the Abeles may recover and that, under the current statute, the Abeles may recover only $1,000.00 jointly per transaction, not $1,000.00 for each consumer per transaction. This issue

was raised for the first time in a reply brief on appeal. It was not raised in the bankruptcy court, nor was it designated as an issue on appeal or discussed in Mid-Penn's original appellate brief. Accordingly, I conclude that the issue is not properly before me, and I will not address it.