Monica Dixon **GILL**

v.

**MID–PENN CONSUMER DISCOUNT COMPANY.**

Civ. A. No. 87–2868.

United States District Court, E.D. Pennsylvania.

Oct. 22, 1987.

---

**3.** According to defendant, *Moody* is awaiting decision in the First Circuit Court of Appeals.

Susan L. De Jarnatt, Philadelphia, Pa., for plaintiff.

Arthur Matusow, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff, Monica Dixon Gill, brings this suit against defendant, Mid-Penn Consumer Discount Company, ("Mid-Penn") alleging violations of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA). Presently before the court are the parties' cross-motions for summary judgment, the parties having entered into a joint stipulation as to facts herein. For the reasons which follow, we grant the motion of the plaintiff and deny the motion of the defendant.

### FACTS

The stipulated facts are as follows:

On or about October 16, 1984, plaintiff borrowed an initial sum of $757.60 from defendant at an annual percentage rate of 23.85% and gave defendant a security interest in the form of a mortgage in the amount of $960.00 on her home at 1644 N. Edgewood Street, Philadelphia, Pennsylvania.

On or about April 15, 1985, plaintiff and defendant refinanced the transaction of October 16, 1984. In this second transaction, the balance of the prior loan was paid and plaintiff received cash in the amount of $710.80. Plaintiff gave defendant a second security interest in the form of a mortgage in the amount of $1,980.00 on her home. At the time of the refinancing, plaintiff was current in her payments to defendant and, had paid defendant $40.00 over the amounts required under the contract for the first loan.

On or about August 27, 1985, plaintiff and defendant refinanced the transaction of April 15, 1985. In this third transaction, the balance of the loan of April 15, 1985

was paid and plaintiff received cash in the amount of $545.38. Plaintiff gave defendant a third security interest in the form of a mortgage in the amount of $2,808.00 on her home. At the time of the refinancing, plaintiff was current in the payments owed to defendant in the April 15, 1985 loan.

On or about May 19, 1986, plaintiff and defendant refinanced the transaction of August 27, 1985. In this fourth transaction, the balance on the loan of August 27, 1985 was paid and plaintiff received cash in the amount of $501.07. Plaintiff gave defendant a fourth security interest in the form of a mortgage in the amount of $3,384.00 on her home. At the time of the refinancing, plaintiff was current in the payments owed to defendant on the August 27, 1985 loan.

For each of these four transactions plaintiff was provided with Truth In Lending Disclosure Statements and with Notices of Right to Cancel.

The mortgage resulting from the August 27, 1985 transaction was satisfied of record in May, 1986. The mortgages resulting from the October 16, 1984 and April 15, 1985 transactions have never been satisfied. Plaintiff has demanded that defendant satisfy the mortgage of May 19, 1986.

In the four transactions plaintiff received total consideration in the amount of $2,468.71. Plaintiff has paid defendant a total of $1,520.00. On March 17, 1987, plaintiff advised defendant that she was rescinding all four transactions pursuant to TILA. On April 13, 1987 defendant notified plaintiff that it would not agree to rescind any of the transactions.

## DISCUSSION

The pertinent law in this case is the federal Truth In Lending Act, particularly 15 U.S.C. §§ 1635(a) and (b) which provide as follows:

Right of Rescission as to Certain Transactions

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom the credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

(b) When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made

at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court....

Also relevant to our consideration are the following provisions of the pertinent regulations found at 12 CFR § 226.23(a)(3) and (b):

SECTION 226.23—Right of Rescission

(a) Consumer's right to rescind....

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of his section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the act....

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires....

Plaintiff alleges that Mid-Penn has violated TILA and its regulations in two regards, thereby allowing plaintiff the right to rescind all four transactions. First, plaintiff avers that the manner in which defendant calculated the rebate of prepaid finance charges for each refinancing was a violation of state law which was not disclosed in the TILA disclosure materials.

Placed in simple terms, plaintiff's allegation is that, with each refinancing, she was improperly charged interest twice for the same period of time the loans were outstanding. Under the type of financing arrangement entered into by plaintiff, the principal amount of the loan was discounted to reflect interest over the life of the loan term. The loan proceeds disbursed to plaintiff reflected this discount. Under such an arrangement, if a loan is prepaid the borrower is due a rebate for prepaid interest to reflect the shorter loan term. Plaintiff alleges that with each refinancing Mid-Penn improperly calculated these interest rebates, not rebating the full amounts due plaintiff. While both parties agree that the so-called "Rule of 78" is the proper method of determining this rebate under the laws of Pennsylvania, they disagree over the mathematical calculation.

Plaintiff's other allegation centers upon Mid-Penn's failure to satisfy of record the pre-existing mortgages in plaintiff's property each time the loan was refinanced and a new mortgage, for the new total outstanding principle, recorded. Since we find that, on this latter issue, defendant has violated TILA and given the relief we find appropriate, we need not reach the intricacies of arithmetic involving the Rule of 78.

■ It has been stipulated that only the mortgage resulting from the August 27, 1985 transaction was satisfied of record. Further, it is apparent that the multiple unsatisfied mortgages were not disclosed on defendant's disclosure statements for the second, third and fourth transactions. 12 CFR § 226.23(b), quoted above, expressly requires that the disclosure materials include retained, as well as newly acquired

security interests. Since Mid-Penn has violated the requirements of § 226.23(b) plaintiff has made out a prima facie showing of a right to rescind these transactions.

 Mid–Penn seeks to avoid this result by arguing that, while the early mortgages have not been satisfied, they are in fact void. Defendant points to the defeasance clause contained in the mortgages and argues that the payment of the initial indebtednesses through the refinancings served to extinguish the security interests. *See* 2 Ladner on Conveyancing in Pennsylvania, 4th Ed., § 12:11 at page 19. We find this contention to be specious and wholly without merit. Further, we are disturbed by the fact that defendant's counsel has made this argument, which has been rejected by at least three other courts, in cases in which he was personally involved representing this same defendant, without bringing these contrary authorities to the court's attention. We find it appropriate to remind counsel of the obligation, under the Code of Professional Responsibility's Ethical Consideration 7–23, to inform a tribunal of legal authority known to the lawyer which is directly adverse to the position he asserts.

In *Tucker v. Mid-Penn Consumer Discount Company*, 74 B.R. 923 (Bankr.E.D. Pa.1987), Mid-Penn's identical argument led the court to express its puzzlement over

... the failure of the Lender to satisfy, apparently even to this day, these mortgages which it acknowledges are void.
....
Anyone searching the title of the Borrowers' property would surely find all of them. Whether admittedly void or not, they apparently exist of record, and presumably will exist until we rectify same in our Order entered hereinafter.

This same reasoning applies to the case *sub judice*. Even if the existence of a defeasance clause serves to make the mortgage void, which it does not, it will continue to impair the marketability of title to plaintiff's property until satisfied of record. A bona fide purchaser must be able to rely upon the state of title as reflected in the public records. The TILA's express reference to retained as well as newly acquired security interests, we believe, is a clear expression of Congressional intent to ensure that consumers are fully informed of the encumbrances placed on their properties.

In *Abele v. Mid-Penn Consumer Discount*, 77 B.R. 460 (E.D.Pa.1987), the court, addressing the same defeasance clause[1] argument propounded by *Mid-Penn* here, held this argument to be "specious". *Id.* at 464. The court stated:

Mid-Penn represents that each defeasance clause provided that the mortgage would become void upon payment of the loan of even date. In fact, each defeasance clause provided that the mortgage would become void upon payment of the loan of even date and of any future advances. Because with each refinancing Mid-Penn loaned the Abeles money in excess of the amount of their previous loan, the future advances provision of each previous mortgage would, by its terms, prevent the mortgage from becoming void, notwithstanding the Abeles' payment of the loan of even date.

As in *Abele*, the future advances clause here would serve to keep all the mortgages obtained by Mid-Penn in full effect.

### Plaintiff's Remedies

 Mid–Penn's inexcusable failure to disclose the retained security interests in plaintiff's property in the second, third and fourth transactions are material violations of 12 CFR § 226.23 sufficient to trigger plaintiff's recision rights under 15 U.S.C.

---

**1.** The defeasance clause contained in the mortgages at issue both here and in *Abele* provided:
Whereas, Mortgagor, by an Obligation bearing even date herewith, is bound unto the Mortgagee in the penal sum of [amount of loan of even date, including finance charge] Dollars, which Obligation provides in part as follows: "The Condition of this Obligation is such, That

if the Obligor shall ... Pay unto Obligee the principal sum of [amount of loan of even date, including finance charge] Dollars, (*and any future advances* made to Obligor or for the protection of the mortgage security) ... Then the above Obligation to be void, or else to remain in full force and effect."

§ 1635. We find plaintiff was justified in asking for rescission and we must determine the consequences of Mid–Penn's wrongful failure to acknowledge the plaintiff's rights. These consequences are threefold. First, 15 U.S.C. § 1635(b) provides that by operation of law, and irrespective of any response to the plaintiff's valid request for rescission, Mid-Penn's security interests in plaintiff's property obtained in connection with the second, third and fourth transactions are void. Second, pursuant to 12 CFR § 226.23(a)(4), plaintiff is excused of liability to pay "finance or other charges" in connection with these transactions. Finally, plaintiff is entitled to statutory recoveries including attorney's fees.

Pursuant to 15 U.S.C. § 1640(a)(2)(A)(i), plaintiff is entitled to twice the amount of any finance charges in connection with the transaction, up to $1,000.00. For the purpose of awarding damages, plaintiff requests that the court treat each refinancing as a separate transaction and award up to the maximum amount for each refinancing. In support of this position plaintiff cites us to cases which she contends stand for the proposition that an award of damages for TILA violations in several transactions are proper even where the violations are identical. While we find that the cases plaintiff has cited are inapposite, we do find that plaintiff is entitled to multiple damages.

In *Brown v. Marquette Savings & Loan Association*, 686 F.2d 608 (7th Cir.1982), the first case the plaintiff has cited, the Court of Appeals for the Seventh Circuit held that the failure to make adequate disclosures each time the finance rate on an adjustable rate loan was changed, constituted separate and distinct violations of TILA, entitling plaintiff to multiple damages. Unlike the instant matter, *Brown* did not involve refinancing transactions, but a single variable rate loan. This distinction is important in light of the current reading of 15 U.S.C. § 1640(g) which provides that:

The multiple failure to disclose to any person any information required under this part or part D or E of this subchapter to be disclosed in connection with a *single account* under an open end consumer credit plan, other *single consumer credit sale, consumer loan, consumer lease, or other extension of consumer credit,* shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries.

The instant matter involves four separate and distinct extensions of consumer credit. This is evident from the duplication of mortgages, promissory notes and disclosure statements executed upon each refinancing. Indeed, in the joint stipulation of facts, the parties have themselves characterized these refinancings as separate transactions. We, therefore, find that it is appropriate to award plaintiff damages for each of the second third and fourth transactions.

Under 15 U.S.C. § 1640(a)(2)(A)(i) plaintiff is entitled to receive the maximum of $1,000.00 for each transaction, as twice the finance charge would exceed this statutory cap. We find that plaintiff is entitled to an award of $3,000.00. We specifically decline to subtract from this amount the difference between the original principal of these loans, $2,468.71, and the amount that plaintiff has repaid $1,520.00, i.e. $948.71. It is to be recalled that 15 U.S.C. § 1635(b) provides that an obligation of the consumer to tender property received from the creditor arises only if the creditor appropriately reacts to the rescission request by satisfying its security interests within 20 days. The creditor's failure to comply with such a valid rescission request obviates the consumer's obligation. We, therefore, find that plaintiff is excused from the repayment of any outstanding balance on these loans.[2] Finally, we find that, pursuant to

---

**2.** We also note that, whereas the amount repaid Mid-Penn by plaintiff far exceeds the amount of the original loan of $757.60 plus the stipulated finance charges, we hold that this loan has been fully satisfied. Our order herein will, therefore, require that all four mortgages obtained by Mid-Penn on plaintiff's property be satisfied of record.

15 U.S.C. § 1640(a)(3), plaintiff is entitled to an award of attorney's fees and costs.

In conclusion, we find that plaintiff was justified in her request to rescind the second, third and fourth transactions due to Mid-Penn's failure to disclose its retention of prior security interests. We, therefore, grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment.

### ORDER

The motion of the plaintiff, Monica Dixon Gill, for summary judgment is GRANTED.

The motion of the defendant, Mid-Penn Consumer Discount Company, for summary judgment is DENIED.

Judgment is entered in favor of the plaintiff, Monica Dixon Gill, in the amount of $3,000.00. Plaintiff is excused from further liability on Promissory Notes executed in favor of defendant dated October 16, 1984,, April 15, 1985, August 27, 1985, and May 19, 1986.

The defendant shall satisfy of record any and all mortgages which it has obtained against the plaintiff's real property located at 1644 North Edgewood Street, Philadelphia, Pennsylvania.

The parties are urged to attempt to agree upon reasonable attorney's fees and costs which are due to plaintiff per 15 U.S.C. § 1640(a)(3). If this matter is not resolved within ten days, plaintiff shall within thirty days of this order file a motion requesting such fees. However, if plaintiff submits a reasonable request for fees which defendant has refused, plaintiff may recover compensation for time spent on the fee application as well.

IT IS SO ORDERED.