**In re Bobby L. RHOADES, Sr. and Judith J. Rhoades, Debtors.**

**Bobby L. RHOADES, Sr., and Judith J. Rhoades, Plaintiffs**

v.

**CREDITHRIFT OF AMERICA, INC., Defendant.**

**Bankruptcy No. 86–83055.
Adv. No. 86–8396.**

United States Bankruptcy Court, C.D. Illinois.

Dec. 23, 1987.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, Ill., for plaintiffs.

Gregory S. Bell, Sutkowski & Washkuhn, Peoria, Ill., for defendant.

## DECISION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The Debtors have a history of borrowing from the Defendant. The relevant transactions started on September 15, 1981, when the Debtors borrowed $9,682.50 secured by a real estate mortgage on the Debtors' residence in Galesburg, Illinois. That mortgage was subsequently released on September 2, 1983, when the indebtedness was renewed and consolidated with an additional small cash advance, bringing the total indebtedness to $9,771.68. This later indebtedness was secured by another mortgage on the Debtors' residence. On July 25, 1984, the Debtors obtained another small additional cash advance and refinanced the indebtedness incurred in September of 1983. The additional advance and the renewal were evidenced by a note dated July 25, 1984, in the amount of $12,-729.07. At that time yet another mortgage was taken by the Defendant. However, the Defendant did not release the mortgage taken in September of 1983. The issues in this case flow out of whether as part of the July 25, 1984 loan transaction the Defendant gave the Debtors notice of the right to rescind pursuant to Section 226.23 of the Truth-in-Lending Regulations, Regulation Z, (12 C.F.R. Section 226.23).[1]

---

1. Truth-in-Lending Regulations, Regulation Z, can be found at 15 U.S.C.A., following Section 1700. Section 226.23 provides in part as follows:

 "Sec. 226.23(a). (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.

 (2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

 (3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after

Mrs. Rhoades testified as follows concerning the events involved with the July 25, 1984 loan transaction. Her husband is a truck driver who is required to be on the road at various times and therefore not readily available during normal business hours. On July 25, 1984, the Debtors went to the Defendant's place of business in Galesburg, Illinois, to obtain an additional loan from the Defendant. At that time they told the Defendant's representative Mr. Rhoades would be out of town and would not be available to pick up the check for the new loan, the note and mortgage were signed by them, and it was anticipated Mrs. Rhoades would come back at a later time and pick up the check. No one explained to the Debtors that because of the mortgage on their residence, Truth-in-Lending gave them a three day rescission period. The Debtors then left the Defendant's place of business, and on July 30th Mrs. Rhoades returned and picked up the check. Copies of the loan papers were given to her on July 30 and were together in an envelope which she subsequently placed in a dresser drawer at their residence. The loan papers stayed in the envelope in the dresser drawer without anything being removed until the Debtors got ready to file bankruptcy. Whereupon the envelope was removed from the dresser drawer and taken to the office of the Debtors' attorney. At that time the envelope was opened and it was discovered the loan papers did not include the notice. On cross examination Mrs. Rhoades admitted she had thrown out some loan papers she had received from the Defendant, but those loan papers pertained to other loans and not the loan in question. She also admitted on cross examination that after she took the loan papers for the various loans to the attorney, in the course of preparing for the trial, she found additional loan papers for one of the earlier loans.

The Defendant's representative testified that the Defendant utilized a notice which is identical to the suggested Federal Reserve Board form. In the body of the notice there is a direction to the borrower to "keep one copy of this notice because it contains important information about your rights". Underneath the informative portion of the notice there is a place for the customer to sign if rescission is requested. Underneath that is a place for the borrower to acknowledge receipt of two copies of the notice. On the back of the notice is a place for the borrower to sign indicating the transaction had not been rescinded. The notice is a snap-out form, the top copy of which is white and the four bottom copies of which are blue. The Defendant's representative also testified the usual procedure was to supply the notice by having the borrower acknowledge receipt of the notice by signing the white copy, which the Defendant retained, and placing the blue copies in an envelope which would be given to the borrower. When the rescission period had elapsed without the transaction being cancelled, the borrower would return and surrender all of the blue copies of the notice. This step was taken so that the Defendant would know that the transaction had not been rescinded.[2] The loan would

consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with Section 125(f) of the act.
(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers. (b) In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following: ..."

2. The problem facing a creditor is that under Section 226.23(a)(2) the borrower can notify the creditor of rescission by mail, telegraph, or other means of written communication and notice of rescission is considered given when mailed, when filed for telegraphic transmission, or if sent by other means, when delivered to the creditor's designated business. It is theoretically possible for a borrower to mail notice of rescission and then consummate the loan before the mail reaches the creditor's designated place of business. To avoid this possibility, creditors normally obtain at the time of the loan closing an affirmative statement that the transaction has not been rescinded. The Defendant appears to go a step further and require the return of all the blue copies of the notice.

then be completed and once completed, the blue copies of the notice of right of rescission would be destroyed.

As to the July 25, 1984 loan transaction, the white copy of the notice shows the Debtors had until midnight, July 29, 1984, to rescind, the place for signing to indicate rescission is left blank, and both Debtors acknowledged receiving two copies of the notice on July 25, 1984. On the back Mr. Rhoades signed indicating the transaction has not been rescinded. The date of "July 30, 1984" was inserted. That date is not in Mr. Rhoades' handwriting, and no one could testify as to who inserted that date, and when. None of the blue copies can be found. On the back of the check, above the Debtors' endorsement there is a notation indicating the notice had been received.

It is the Debtors' position they were never informed of their right to cancel and they never received the blue copies of the notice. The Defendant relies on Section 125(c) of the Truth-in-Lending Act, 15 U.S.C. Section 1635 (Act) which provides as follows:

> (c) Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this title by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

The Defendant, relying upon the Debtors' acknowledgment of receipt of the notice found on the white copy and the back of the check argues the Debtors have not rebutted the presumption created by Section 125(c).

Some presumptions are based on social and economic policy which is intended to handicap a disfavored party. *McCormick on Evidence*, 2nd ed., ch. 36, Section 343. Truth-in-Lending was enacted to benefit borrowers and it would follow that Section 125(c) was included with a similar result in mind. Section 125(c) establishes the rule of evidence to be applied. It begins by rejecting any other "rule of evidence" in favor of a rule which states that written acknowledgment "does no more than create a rebuttable presumption of delivery thereof". The rule rejects application of a conclusive presumption in favor of a rebuttable presumption. However the question remains, what is the standard of proof necessary to rebut the presumption? The reported cases have not discussed this question.[3]

A presumption not only shifts the burden of producing evidence, but under the preferable view operates to assign the burden of persuasion as well. *McCormick on Evidence, supra.* In discussing presumptions, Cleary & Graham's *Handbook of Illinois Evidence*, Section 302.5 (4th ed. 1984) states that occasional presumptions, due to unusual compelling considerations, can be overcome only by "clear and convincing" evidence. In the case before this Court, there are several possibilities as to what could have occurred. One possibility is the Debtors did not receive the blue copy of the notice, and the Defendant's practice of requiring a return of the blue copy of the notice and their subsequent destruction facilitates disguising that possibility. The other possibility involves the Debtors receiving the blue copy of the notice and then losing or destroying them, or being returned to the Defendant who subsequently destroyed them. Having heard the evidence and applying the clear and convincing standard to the evidence, this Court finds the Debtors did not prove by clear and convincing evidence they did not receive the notice. On two separate occasions the Debtors acknowledged receipt of the notice. The primary evidence submitted to contest their acknowledgments of receipt was the Debtors' testimony they did not in fact receive the notice. Something more is required. The Debtors also rely on the fact that Mr. Rhoades was out of town while the rescission period was running and when Mrs. Rhoades picked up the check. That fact is not relevant to the inquiry. The important fact was that Mr. Rhoades was available on July 25, 1984, to receive the notice. He did not have to be present

**3.** See *Abbott v. Shaffer*, 564 F.Supp. 1200 (D. Utah C.D.1983), and *Gramatan Home Investors*

*Corp. v. Mack*, 70 A.D.2d 288, 421 N.Y.S.2d 124 (1979).

in Defendant's office in order to rescind the transaction if that had been his desire. He could have done so by any of the forms of written communication provided for by Section 226.23. Doubt is cast on the Defendant's position because of its practice of destroying the blue copy of the notice once they are returned.[4] However, the Debtors' position is clouded by the fact that Mrs. Rhoades admitted she had disposed of some loan papers and in the course of preparing for trial she found other loan papers. Albeit these loan papers involved previous loans, the possibility exists that she could have disposed of the notice or not have been able to locate it. To accept the Debtors' mere assertion they didn't receive the notice would place the Defendant in a position of not being able to protect itself by obtaining acknowledgment of receipt, and thereby render Section 125(c) meaningless. Therefore, this Court holds the Debtors received the notice and Section 226.23 was not violated.

■ The next issue for this Court to determine is whether the plaintiffs can amend their complaint to conform to the evidence. During the course of the trial, the Defendant's representative testified that when the loan was actually closed, all of the blue copies of the notice were taken back and ultimately destroyed. The Debtors made an oral motion to amend their complaint to add as a violation of Regulation Z, failure to comply with Section 226.-17(a) which requires that disclosures should be made "in a form that the consumer may keep". The Defendant objected to the amendment on the grounds the issues were formed by the pleadings and the Debtors are not entitled to any relief other than that based upon the matters originally raised by the complaint.

Rule 15(b) of the Federal Rules of Civil Procedure provides as follows:

(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Rule 15(b) has rejected any concept that amendments are barred if they result in a change to the plaintiff's cause of action and does not limit the amendment to the transaction or occurrence set forth in the pleadings. The only apparent limitation is that the court have jurisdiction over the matter tried. Change in the nature of the cause of action or the legal theory of the action, is immaterial, so long as the opposing party has not been prejudiced in presenting his case. 1 *Moore's Manual—Federal Practice and Procedure*, Section 9.09(8). In the case before this Court, there is no question of jurisdiction. All the Debtors are attempting to do is change the nature of their Truth-in-Lending cause of action. Furthermore, the reason for the change is the testimony of the Defendant's own representative. During the course of the testimony the Defendant's representative made statements which the Debtors believe established a violation of Truth-in-Lending. It is difficult for this Court to see how the Defendant is prejudiced when it is the testimony of its own representative as to the Defendant's own procedure that gave rise to the request for amendment. Were it the testimony of the Debtors or some third

---

4. A better practice would be to have the borrowers indicate on the white copy of the notice that rescission has not been elected, and hold it in the file.

party which might catch the Defendant by surprise, the result might be different. But the Defendant knows or should know its procedures, and should not be surprised when called upon to explain them, that the other party would take issue with them.

■ Having decided that the complaint can be amended, the Court must now determine whether the return and destruction of the blue copies of the notice constitutes a violation of Section 226.17(a). Section 226.-17(a)(1) states that the creditor shall make the "disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep." That section goes on to provide that the "disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under Section 226.18." Although Section 226.17 refers to Subpart C dealing with closed-end credit, and Section 226.23 dealing with the right of rescission is a part of Subpart C, the use of the word "disclosures" limits the documents which the consumers are entitled to keep pursuant to Section 226.17(a)(1) to the actual Truth-in-Lending disclosure statement required by Section 226.18 and does not include the notice under Section 226.23. A contrary result would require the disclosures of Section 226.18 to be combined with the notice. Yet Section 226.-17(a)(1) says everything else shall be segregated from the disclosures of Section 226.-18. A contrary result would also be inconsistent with the requirements of Section 226.23(b) which requires the notice to be on a separate document that identifies the transaction and makes the disclosures required by section 226.23. There is nothing in any of the Truth-in-Lending sections or the comments or forms which support the Debtors' position. In fact, the reverse is true. In the context of Section 226.17, disclosures means those required by Section 226.18 and nothing more.

■ The Debtors' form of notice, which is identical to the model form, provides a direction the customer is to keep one copy of the notice because it contains important information about their rights. Further-

more, the form of notice used by the Defendant contains a place where each customer acknowledges receiving two copies of the notice. The Debtors' argument takes the form of a question: what is the purpose of the quoted language in the notice and the delivery of the two copies of the notice if it is not to permit the Debtors to keep a copy of the notice. There isn't any question that the Debtors are entitled to receive a copy of the notice and that it contains a direction they are to keep a copy of the notice because it contains information about their rights. As this Court has just held that the Debtors received the notice, the issue is whether the defendant can recover the copies of the notice after the Debtors have received the notice and not acted to implement those rights. Although Section 125 of the Act and Section 226.23 of the Regulation require delivery of the notice of the right to rescind, neither specifically addresses the issue. The model forms contain a direction that the debtors are to keep one copy, but also do not specifically address the issue. Therefore, the issue must be resolved by examining the purpose for the notice. The purpose of the notice is to advise the debtors of their right to rescind, the effects of rescission, and how to rescind. It would follow the debtors need to keep the notice for at least three days, and longer if they in fact rescinded the transaction. But where the notice is given and the right of rescission is not exercised, there is no longer any reason why the debtors need to keep a copy of the notice. Once the period for rescission has run and it has not been exercised, the need to retain the notice is no longer important to the Debtors. As neither Section 125 of the Act nor Section 226.23 of the Regulation sets forth any requirement that the Debtors retain the notice, and as this Court does not see any practical reason which prevents the Defendant, in the facts of this case, from recovering the blue copy of the notice, this Court holds that this action does not violate the requirements of Truth-in-Lending.

After the issues in this case were briefed, and while the case was under advisement, the Debtors' attorney filed a

944

copy of the decision in *Abele v. Mid–Penn Consumer Discount,* 77 B.R. 460 (U.S.D.C. E.D.Penn.1987), indicating that this decision is "eerily reminiscent" to this case. The *Abele* case was decided under the previous and now superseded Truth-in-Lending Regulations, and held that Truth-in-Lending was violated because the Abeles had the right to rescind the transaction and the defendant failed to take any action in response to the Abeles' rescission letter. Although in general the facts are similar in the sense that there were a series of loans and the issue involved the right of rescission, the case is not in point because in the case before this Court the current Truth-in-Lending Regulations are involved and the issue is whether the debtors received the notice of the right to rescind and not whether the debtors rescinded the action and the defendant failed to respond to that action.

IT IS, THEREFORE, ORDERED that judgment is entered in favor of the Defendant and against the Plaintiffs.

This Decision and Order is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.